# EXHIBIT E

FILED: APPELLATE DIVISION - 1ST DEPT 04/18/2022 05:17 PM 2021-02726
NYSCEF DOC. NO. 26 RECEIVED NYSCEF: 04/18/2022

*To Be Argued By:*
Michael C.Mulè
*Time Requested: 15 Minutes*

*New York County Clerk's Index No. 155504/2017*

# New York Supreme Court

APPELLATE DIVISION — FIRST DEPARTMENT

**Case Nos.**
**2021-02726**
**2021-03675**

STEPHANIE LOPEZ, Individually and on Behalf of Other Persons Similarly Situated,

*Plaintiff-Respondent,*

*against*

BRONX FORD, INC., CITY WORLD ACQUISITION GROUP, INC., CITY WORLD MOTORS, LLC, CITY WORLD ESTATE AUTO HOLDINGS, L.L.C. AND/OR ANY OTHER ENTITIES AFFILIATED WITH OR CONTROLLED BY BRONX FORD, INC., CITY WORLD ACQUISITION GROUP, INC., CITY WORLD MOTORS, L.L.C. AND/OR CITY WORLD ESTATE AUTO HOLDINGS, L.L.C.,

*Defendants-Appellants.*

## BRIEF FOR DEFENDANTS-APPELLANTS

MILMAN LABUDA LAW GROUP PLLC
*Attorneys for Defendants-Appellants*
3000 Marcus Avenue, Suite 3W8
Lake Success, New York 11042
516-328-8899
joe@mllaborlaw.com
michaelmule@mllaborlaw.com
lisa@mllaborlaw.com
emanuel@mllaborlaw.com

*Of Counsel:*

Joseph M. Labuda
Michael C.Mulè
Lisa M. Skruck
Emanuel Kataev

*Printed on Recycled Paper*

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT .......... 1**

**QUESTIONS PRESENTED .......... 6**

**FACTUAL & PROCEDURAL BACKGROUND .......... 7**

**A. Nature of the Action .......... 7**

**B. Procedural History and Discovery .......... 8**

**C. Lopez's Motion to Sanction Acquisition and Acquisition's Opposition .......... 18**

**D. The June 2021 Order Appealed From .......... 23**

**E. Lopez's Subsequent Motion to Sanction Defendants Related to Discovery and Defendants' Opposition .......... 25**

**F. The September 2021 Order Appealed From .......... 27**

**STANDARD OF REVIEW .......... 28**

**LEGAL STANDARD .......... 29**

**ARGUMENT .......... 32**

**I. THE LOWER COURT, IN ITS JUNE 2021 ORDER, IMPROVIDENTLY EXERCISED ITS DISCRETION IN STRIKING THE ANSWERS OF ALL DEFENDANTS .......... 32**

**A. The Court Abused Its Discretion in Ordering, *Sua Sponte*, that the Pleadings of Defendants Other than Acquisition be Stricken .......... 32**

**1. The Non-Acquisition Defendants Were Deprived of Due Process .......... 34**

**2. The Court Failed to Give Non-Acquisition Defendants Prior Notice Before Striking Their Pleadings .......... 35**

3. The Court Abused its Discretion by Awarding Relief Well Beyond the Scope of the Motion for Sanction ................ 35

B. The Court Abused Its Discretion in Striking Defendants' Pleadings Based on its Erroneous Conclusion that Defendants' Corporate Representative Committed Perjury as to Acquisition ........................................................................................... 37

1. There Was No Disclosure Violation as to Acquisition... 37

2. There Was Also No Willful Misconduct ......................... 40

3. Bergin Offered Plausible Alternative Explanations for the Discrepancies in Her Testimony, Differing from the Court's Presumptive Explanation of Perjury ................ 43

4. Bergin Did Not Commit Perjury .................................... 47

5. Even if Perjury Was Committed (Which It Was Not) It Was an Isolated Instance Not Sufficient to Warrant Striking Defendants' Pleadings ...................................... 49

6. The Lower Court Failed to Conduct an Evidentiary Hearing as Required by 22 NYCRR § 130-1.1(d).......... 51

II. THE LOWER COURT, IN ITS SEPTEMBER 2021 ORDER, IMPROVIDENTLY EXERCISED ITS DISCRETION BY DEEMING ALL ELEMENTS OF CLASS CERTIFICATION SATISFIED AS AGAINST ALL DEFENDANTS AS A DISCOVERY SANCTION ......................................................... 53

A. The Lower Court Provided Relief Beyond What Plaintiff Requested ....................................................................... 54

B. Plaintiff Did Not Sustain Her Burden of Establishing That Defendants Bronx Ford, City World Ford, and Acquisition Violated Any Discovery Order and the Record Does Not Support Any Sanction Against Them ...................................... 54

**C. The Lower Court Neither Issued Prior Warning That Defendants Would Be Sanctioned With Respect to the Alleged Discovery Violations Nor Was Any Conditional Order Issued ......... 61**

**D. The Record Does Not Support Deeming All Prerequisites for Class Certification Established, and Thus, the Sanction Was Unwarranted ......... 63**

**E. City World Toyota's Non-Compliance Was Not Willful, Contumacious, or in Bad Faith ......... 66**

**CONCLUSION ......... 68**

# TABLE OF AUTHORITIES

## Cases

*A.I.A. Holdings, S.A. v. Lehman Bros.*,
2002 WL 1271722 (S.D.N.Y. May 29, 2002)............ 43 n. 19, 44 n. 19

*Agolli v. Zoria Hous., LLC*,
188 A.D.3d 514 (1st Dept. 2020) ...................................................... 60

*Alexander & Alexander of New York Inc. v. Fritzen*,
114 A.D.2d 814 (1st Dept. 1985) ...................................................... 56

*Alexander & Alexander of New York Inc. v. Fritzen*,
68 N.Y.2d 968 (1986)......................................................................... 56

*Allstate Ins. Co. v. Buziashvili*,
71 A.D.3d 571 (1st Dept. 2010) .................................................. 58, 61

*Alpha Funding Group v. Cont. Funding, LLC*,
17 Misc. 3d 959 (Sup. Ct., Kings Cty. 2007) .................................... 59

*Anderson & Anderson LLP-Guangzhou v N. Am. Foreign Trading Corp.*,
165 A.D.3d 511 (1st Dept. 2018) ...................................................... 67

*Banner v. New York City Hous. Auth.*,
73 A.D.3d 502 (2011)......................................................................... 66

*Berner v. British Commonwealth Pacific Airlines*,
346 F.2d 532 (2d Cir. 1965) .............................................................. 42

*Billy v. Consolidated Mach. Tool Corp.*,
51 N.Y.2d 152 (1980)......................................................................... 56

*Borden v. 400 E. 55th St. Assoc., L.P.*,
24 N.Y.3d 382 (2014)......................................................................... 60

*Carlos v. 395 E. 151st St., LLC*,
41 A.D.3d 193 (1st Dept. 2007) ........................................................ 58

*Casanas v. Carlei Group LLC*,
149 A.D.3d 515 (1st Dept. 2017) ........................................................ 44

*Catarine v. Beth Israel Med. Ctr*.,
290 A.D.2d 213 (1st Dept. 2002) ................................................ 44, 67

*CDR Creances S.A.S. v. Cohen*,
23 N.Y.3d 307 (2014)................................................................ 43, 49

*CEMD El. Corp. v. Metrotech LLC*,
141 A.D.3d 451 (1st Dept. 2016) ........................................................ 51

*Corner Realty 30/7 Inc. v. Bernstein Mgmt. Corp*.,
249 A.D.2d 191 (1st Dept. 1998) ................................................ 34, 37

*De Socio v. 136 E. 56th St. Owners, Inc*.,
74 A.D.3d 606 (1st Dept. 2010) .......................................................... 65

*Delaney v. Automated Bread Corp*.,
110 A.D.2d 677 (2d Dept. 1985)................................................. 30, 38

*Fish & Richardson, P.C. v. Schindler*,
75 A.D.3d 219 (1st Dept. 2010) .......................................................... 60

*Gibbs v. St. Barnabas Hospital*,
16 N.Y.3d 74 (2010)............................................................................ 61

*Gleason v. Jandrucko*,
860 F.2d 556 (2d Cir. 1988) ..................................................... 43 n. 19

*Gray v Tri-State Consumer Ins. Co.*,
2015 NY Slip Op 32318(U) ............................................................... 49

*JPMorgan Chase Bank, N.A. v. Klein*,
178 A.D.3d 788 (2d Dept. 2019)......................................................... 36

*Kubacka v. Town of N. Hempstead*,
240 A.D.2d 374 (2d Dept. 1997)................................................. 31, 33

*Kudinov v. Kel-Tech Constr., Inc*.,
65 A.D.3d 481 (1st Dept. 2009) .......................................................... 64

*Landrigen v. Landrigen*,
173 A.D.2d 1011 (3d Dept. 1991)............................ 32, 33, 55, 60, 63

*Lee v. 13th St. Entertainment LLC*,
161 A.D.3d 631 (1st Dept. 2018) ................................................ 61, 65

*Long v. State*,
7 N.Y.3d 269 (2006)............................................................ 8 n. 3

*Matter of Fernandez v. Nigro*,
178 A.D.3d 703 (2d Dept. 2019).................................................. 35

*Matter of Hartman*,
47 A.D.2d 624 (1st Dept. 1975) .............................................. 8 n. 3

*McGilvery v. New York City Transit Auth.*,
213 A.D.2d 322 (1st Dept. 1995) ........................................ 30, 38, 41

*Northfield Ins. Co. v. Model Towing & Recovery*,
63 A.D.3d 808 (2d Dept. 2009)..................................................... 45

*Northway Eng'g v. Felix Indus.*,
77 N.Y.2d 332 (1991).......................................................... 31, 33, 63

*Nugent v. City of New York*,
2019 NY Slip Op 32410(U) (N.Y. Sup. Ct. 2019)...................... 29, 38

*Oppedisano v. Oppedisano*,
138 A.D.3d 1080 (2d Dept. 2016).................................................. 35

*Pekelis v. Transcontinental & Western Air*,
187 F.2d 122 (2d Cir. 1951) ........................................................ 42

*People v. Nunez*,
160 A.D.3d 1227 (3d Dept. 2018).................................................. 42

*People v. Uhrey*,
169 Misc. 2d 1015 (Sup. Ct. Kings Cty. 1996)................................. 42

*Port Chester Elec. Constr. Corp. v. Atlas*,
40 N.Y.2d 652 (1976)........................................................................ 56

*Postel v. New York Univ. Hosp.*,
262 A.D.2d 40 (1st Dept. 1999) ........................................ 34, 63 n. 27

*Rezende v. Citigroup Global Mkts., Inc.*,
2011 U.S. Dist. LEXIS 45475 (S.D.N.Y. 2011) ................................ 49

*Rossal-Daub v. Walter*,
58 A.D.3d 992 (3d Dept. 2009)................................................... 32, 34

*Rossbach v. Montefiore Med. Ctr.*,
2021 U.S. Dist. LEXIS 205404 (S.D.N.Y. 2021) .............................. 52

*Salomon v. Angsten*,
19 A.D.3d 143 (1st Dept. 2005) ........................................................ 52

*Saxe v. City of New York*,
250 A.D.2d 751 (2d Dept. 1998)........................................................ 39

*Scarola Ellis LLP v. Padeh*,
116 A.D.3d 609 (1st Dept. 2014) ...................................................... 52

*Then v. New York City Transit Authority*,
99 A.D.3d 986 (2d Dept. 2012)........................................................... 61

*Those Certain Underwriters at Lloyds, London v. Occidental Gems, Inc.*,
11 N.Y.3d 843 (2008)........................................................................... 28

*Tsai v. Hernandez*,
284 A.D.2d 116 (1st Dept. 2001) ...................................................... 36

*U.S. Bank N.A. v. Halevy*,
176 A.D.3d 1009 (2d Dept. 2017)..................................................... 36

*U.S. Fire Ins. Co. v. J.R. Greene, Inc.*,
272 A.D.2d 148 (1st Dept. 2000) ...................................................... 61

*USAA Fed. Sav. Bank v. Calvin*,
145 A.D.3d 704 (2d Dept. 2016) .......... 33, 36

*Viruet v. Mount Sinai Med. Ctr. Inc.*,
143 A.D.3d 558 (1st Dept. 2016) .......... 66

*Williams v. City of NY*,
174 A.D.3d 834 (2d Dept. 2019) .......... 30

*Zimmerman v. Poly Prep Country Day Sch.*,
2012 U.S. Dist. LEXIS 78816 (E.D.N.Y. 2012) .......... 43, 44

*Zletz v. Wetanson*,
67 N.Y.2d 711 (1986) .......... 31, 33

**Rules**

9 NYCRR § 8.202.8 .......... 11 n. 7

9 NYCRR § 8.202.67 .......... 11 n. 7

22 NYCRR § 130-1.1 .......... 18, 29 n. 15, 33, 34, 51, 51 n. 21, 52

22 NYCRR § 600.1 .......... 28 n. 14

22 NYCRR § 1250.9 .......... 28 n. 14

Federal Rules of Civil Procedure 33 .......... 59

New York Civil Practice Law & Rules § 901 .......... 3, 18, 27, 53, 60, 64

New York Civil Practice Law & Rules § 902 .......... 3, 18, 27

New York Civil Practice Law & Rules § 2214 .......... 33

New York Civil Practice Law & Rules 3042 .......... 31, 33

New York Civil Practice Law & Rules 3124 .......... 54

New York Civil Practice Law & Rules § 3126
18, 24, 29, 29 n. 15, 30, 31, 33, 34, 36, 37, 40, 41, 44, 51 n. 21, 54, 61, 63, 65

New York Penal Law § 210.10........................................................................ 41

**Other Sources**

Siegel, Practice Commentaries, op. cit., C3042:5 .................................. 31, 33

## PRELIMINARY STATEMENT

Plaintiff-Respondent Stephanie Lopez ("Lopez" or "Plaintiff") brought this purported class action based on alleged wage and hour violations under the New York Labor Law ("NYLL") against Defendants-Appellants Bronx Ford, Inc. ("Bronx Ford"), and City World Acquisition Group, Inc. ("Acquisition"), later adding Defendants-Appellants, City World Estate Auto Holdings, L.L.C. (herein, "City World Ford"), City World Motors L.L.C. (herein, "City World Toyota,") (collectively, "Defendants"). Among the Defendants, Bronx Ford (until 2013), City World Ford, and City World Toyota are the entities that employed Lopez.

Defendants submit this brief in support of their appeal from an order of the Supreme Court, New York County (Nervo, J.), dated June 15, 2021 which struck the answer as to all Defendants – even though Lopez moved against no Defendant other than Acquisition. Justice Nervo was new on the case, which for four (4) years had been presided over by the Hon. Margaret A. Chan.

That motion was based on testimony of Ms. Christine Bergin ("Bergin"), who was the designated corporate representative for all Defendants. For nearly a decade, Bergin had acted as controller of Defendant-related entities through various name changes and restructuring. Lopez, herself, testified that "City World changed their name a lot."

The crux of Lopez's argument on the motion was that Acquisition's answer should be stricken because Bergin's testimony, concerning her role at Acquisition and what Acquisition did, conflicted with two of her affidavits from three and seven years earlier. Bergin was not confronted with those affidavits during her deposition, but explained in her opposition to Lopez's sanctions motion that the inconsistencies were, essentially, attributable to her own imprecision and failure to distinguish among the various entities at the time and the sloppiness of Defendants' prior counsel – not any willful intent to deceive. Despite this, the lower court found that Bergin committed "demonstrable perjury" – without even affording Bergin the opportunity of a hearing.

As explained below, the inconsistencies between Bergin's testimony and prior affidavits could have been addressed immediately, if Lopez's counsel had confronted her with the prior affidavits during her deposition. Also, the lower court could have imposed much less severe sanctions in order to remedy any testimonial deficiencies. If Bergin was deemed to not have sufficient knowledge of Acquisition, Lopez could have sought the production of another corporate representative, as requested in the alternative by Plaintiff. Moreover, Acquisition's role in this case, as an entity that never employed Lopez, is secondary to the roles of the other Defendants.

Thus, it is submitted that the sanction was not warranted against Acquisition. And it certainly was not warranted against the other Defendants, Bronx Ford, City World Ford, and City World Toyota. Those Defendants did not even have notice that the lower court would sanction them because Lopez did not move against them. The lower court's sanction against those Defendants came "out of the blue." In addition, Bergin provided comprehensive testimony regarding all other Defendants, including the Defendants that had employed Lopez: Bronx Ford, City World Ford and City World Toyota. In fact, Bergin provided nearly 300 pages of testimony over nearly eight (8) hours with minimal objections. Therefore, the Supreme Court improvidently exercised its discretion by striking the answer of all Defendants.

Defendants also submit this brief in support of their appeal from an Order of the Supreme Court, New York County (Nervo, J.), dated September 16, 2021, which granted Lopez's motion for discovery sanctions by deeming the prerequisites of class certification under CPLR §§ 901 and 902 established. The lower court's Order went beyond Lopez's Notice of Motion which only asked the court to deem three of the five prerequisites of class certification established. In addition, Lopez's motion focused on the discovery violation(s) of one defendant, City World Toyota. The lower court apparently relied on its prior finding of perjury and concluded that all Defendants failed to provide pre-class discovery as directed.

The court, however, did not articulate how Bergin's alleged "perjurious testimony," concerning only Acquisition, "frustrated" or "prevented" Lopez from establishing all prerequisites of class certification as against all Defendants.

The record demonstrates the contrary: that Plaintiff had a full and fair opportunity to ask questions concerning the elements necessary to establish certification of a class action. Nor did the lower court articulate how Defendants failed substantially to comply with their discovery obligations or the court's Orders. To the contrary, the record establishes that Defendants, other than City World Toyota, supplied extensive discovery and complied, or substantially complied, with their discovery obligations. Accordingly, the lower court provided no reasoning as to why deeming all elements of class certification satisfied as against all Defendants was a proportionate sanction.

In addition, although the lower court's Order indicated that it had previously issued an "order cautioning" Defendants that "further frivolous behavior supported additional sanctions," and that its warning had "gone unheeded," there was no caution or prior Order that Defendants Bronx Ford, City World Ford, and Acquisition would be sanctioned for the violation of City World Toyota, and there was no prior warning directed, specifically, toward City World Toyota. Moreover, the record establishes that, before the case was transferred to Justice Nervo, Lopez made only one discovery motion – and that was resolved by a stipulated Order.

In her motion papers, Lopez's counsel listed some (not all) orders of Justice Chan and suggested that orders were successively entered because Defendants repeatedly failed to comply with the court's prior orders.

However, the reality is that Justice Chan held multiple status conferences and issued Orders concerning additional and refined discovery demands by Lopez, and that Defendants, other than City World Toyota, complied, or substantially complied. Therefore, the Supreme Court improvidently exercised its discretion in deeming all elements of class certification established as to all Defendants.

As established below, Defendants and their corporate representative, substantially and in good faith, complied with discovery, and even if their responses lacked precision, or were even sloppy, that did not warrant the draconian sanctions imposed. Accordingly, the orders appealed from (collectively, the "Orders") should be reversed and/or modified.

## QUESTIONS PRESENTED

1. Did the Supreme Court improvidently exercise its discretion in its June 15, 2021 Order by striking the answer of all Defendants when Plaintiff only moved for sanctions against Acquisition?

Yes.

2. Did the Supreme Court improvidently exercise its discretion in its June 15, 2021 Order by striking the answer of all Defendants based on a perjury finding that related to the role of Defendants' corporate representative as to Acquisition, Acquisition's business, and Acquisition's corporate structure, and did not concern the other Defendants?

Yes.

3. Did the Supreme Court improvidently exercise its discretion in its June 15, 2021 Order by concluding, without a hearing, that Defendants' corporate representative committed perjury based on inconsistencies between the deposition testimony of Defendants' corporate representative as to Acquisition and her declaration and affidavit from 2013 and 2017, respectively, where Defendants' corporate representative had not been confronted with those inconsistencies at her deposition and did not have an opportunity to fully explain them at a deposition or hearing?

Yes.

4. Did the Supreme Court improvidently exercise its discretion in its September 16, 2021 Order by granting class certification as a discovery sanction as against all Defendants where the record lacks evidence that Defendants failed substantially to comply with their discovery obligations, and, in fact, supports a finding of substantial compliance?

Yes.

5. Did the Supreme Court improvidently exercise its discretion in its September 16, 2021 Order by granting class certification as a discovery sanction as against all Defendants where Lopez failed to demonstrate that she was "frustrated" or "prevented" from establishing all prerequisites of class certification as against all Defendants?

Yes.

6. Did the Supreme Court improvidently exercise its discretion in its October 19, 2021 Order by its award of attorneys' fees?

Yes.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Nature of the Action

On June 16, 2017, Lopez commenced this putative class action against Defendants Bronx Ford and Acquisition,[1] seeking to recover damages on behalf of herself and all other similarly situated salespersons and porters for alleged wage and hour violations under the NYLL (R1, R158, R195, R230-38, R484, R574, R719, R736, R764-72).[2]

Lopez alleges that she and other sales representatives were employed by Defendants, that they were paid "commission plus a flat rate of pay," and that "[i]n many instances … a sales representative did not earn enough commissions to reach the minimum wage and overtime requirements" in violation of the NYLL (R34-46). In addition, she claims that she and other sales representatives were impermissibly charged-back paid commissions for unexplained reasons, and that Defendants maintained schemes whereby they manipulated the gross profits of cars sold to reduce the commissions paid to its salespeople. *Id.*

---

[1] Defendants City World Ford and City World Toyota were joined as Defendants when Plaintiff amended her complaint in April 2018. (R34; compare with R119).

[2] About a month after this action was commenced, Lopez filed another action against Harold Bendell, Allan Housick, Bronx Ford, Inc. and City World Acquisition Group, Inc., *et al.*, in the Supreme Court of the State of New York, New York County, under Index No. 156292/2017, alleging discrimination, hostile work environment, retaliation, and unlawful termination under the New York State and City Human Rights Laws (the "Discrimination Action") (R195-215). This firm substituted in as Defendants' counsel in both actions on June 22, 2018 (R159). There is no evidence that Lopez ever worked as a "porter" for any Defendant. *Id.*

Defendants answered and denied the substantive allegations contained in the complaint. (R365-78). Although this action is against all four Defendants (R35), the record establishes that Plaintiff worked for three of the Defendants – City World Toyota (from 2008 to 2010), Bronx Ford (from March 2012 to 2013), and City World Ford (from sometime in 2013 through March 2017) (R120, R572, R1204, R1245, R1248-51, R1253-54, R1256-57, R1411-12, R1492, R1517-18, R1612-13, R1619, R1632, R1644, R1682-88).

**B. <u>Procedural History and Discovery</u>**

Justice Chan presided over the action and managed pre-class discovery until on or about April 19, 2021, when it was transferred to the Hon. Frank P. Nervo (NYSCEF Doc. No. 118).[3] Before 2021, only one discovery motion was filed in this action – and that motion was resolved by a stipulated order, dated August 14, 2019 (the "August 2019 Order"). (R508). The August 2019 Order required "Defendants to produce … records for all automobile salespersons employed by Defendants" for three (3) random months per year from 2011 through 2019 (R508-R510). It also required Defendants to produce any and all time records, payroll records, and documents reflecting commission agreements or calculations of commissions, including but not limited to earning reports and agreements. (R508-R510).

---

[3] This court may take judicial notice of matters of public record. *See, e.g.*, *Long v. State*, 7 N.Y.3d 269, 275 (2006); *Matter of Hartman*, 47 A.D.2d 624 (1st Dept. 1975).

As explained below, after that Order, Defendants complied, except for Defendant City World Toyota (discussed further *infra*). City World Toyota did produce some documents (R594-95). However, City World Toyota operated under the mistaken and admittedly misguided belief that it was not required to produce documents related to other salespersons because Lopez was last employed by it before 2011 and, thus, outside of the statute of limitations period (R157, R736-38, R742). Defendants only produced documents from dealerships Plaintiff actually worked for during the relevant statute of limitations period, and apparently conceived their discovery obligation to be to produce documents related to those salespersons who actually worked with Lopez within the limitation period to bring suit, *i.e.*, from 2011 through the present (then, 2019). (R736-38).

As a result, with some possible exceptions, documents related to those salespersons who worked at City World Toyota were not produced because Plaintiff Lopez last worked for City World Toyota in 2010.[4] (R35 ¶ 8, R157, R736-38, R742, R1204, R1245, R1248-R1251, R1253-R1254, R1256-R1257, R1411-R1412); (R1492, R1517-R1518, R1612-R1613, R1619, R1632, R1644, R1682-R1688). City World Toyota also conflated its discovery obligations with concepts of standing based on the statute of limitations (R742-43).

[4] This misconception did not affect Defendants Bronx Ford or City World Ford as Lopez worked for those Defendants within the six-years preceding her complaint (R157).

This error, solely affecting Defendant City World Toyota, colors the discovery issues that arose thereafter.[5] After the August 2019 Order, Justice Chan held regular status conferences, in person and remotely during the COVID crisis, to manage the discovery process, including conferences on January 8, 2020, March 11, 2020, July 14, 2020, September 23, 2020, December 9, 2020, and April 9, 2021. (R483, R511-14, R47, NYSCEF Doc. No. 79 (*see* fn. 3, *supra*), R711). At each of those status conferences, the lower court dealt with issues particular to pre-class certification discovery and with Lopez's refined discovery requests. *Id.* The context of those orders is important for reviewing the orders appealed from.

On January 8, 2020, following a status conference, Plaintiff sought a supplemental production by Defendants, including "supplement[ing their] latest production of documents with identification markers for putative class members," producing "any commission agreements" not produced "to the extent Defendants are in possession of same" and to produce "'CAP sheets,' not produced "to the extent Defendants are in possession of same …." (R511). "CAP sheets" provide the financial details pertaining to each vehicle sold, including to whom commissions were paid for the pertinent transaction and the amount of those commissions. (R511, R583, R606, R618, R622, R632-33).

[5] Since City World Toyota produced no documents on basis, it, necessarily, failed to comply with subsequent orders concerning the production of documents (R511-14).

Therefore, the request for CAP sheets was a much more granular (and onerous) request than prior requests that were directed, more generally, toward commissions paid to salespersons. This is so because each CAP sheet contained particularized information about each individual car sale, including odometer information, buyer information, financing information, tax information, accessories, hard items added, actual cash value, rebates, after market optional items, commission gross, reserve information, service contract information, "bird dog" or referral fee information, etc. (R618-22).

In these status conferences, the parties were working together to complete discovery.[6] On March 11, 2020, the court held another status conference which extended deadlines. (R512-R513). The Court also adjusted the deadline for Lopez to move for class certification. *Id.*

Then, the Corona virus pandemic struck, and all acts required by court order in civil cases were tolled.[7]

[6] In the related Discrimination Action, depositions of Lopez and defendants, including Bergin, who was Defendants' corporate representative in this case, took place in February and July 2020 (R159-61, R216-R229, R239-70, R1204-R1491, R1492-R1818).

[7] On March 7, 2020, Governor Cuomo issued an Executive Order providing that: "… any specific time limit for the commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, … or by any other statute, local law, ordinance, *order*, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020. *See* 9 NYCRR § 8.202.8 (emphasis added). This Executive Order was continuously extended through November 3, 2020. *See* 9 NYCRR § 8.202.67.

On July 14, 2020, another status conference was held (R514). Despite the continued effect of the Corona virus pandemic, the only outstanding discovery item raised there concerned the "CAP Sheets, which were referenced in paragraph (iii) contained in the January 8, 2020 Order (R511, R514). The Order required production by September 16, 2020 (R514). The production of CAP Sheets was delayed, among other reasons, because of the pandemic, and also because "each specific deal had to be manually printed … for thousands of deals." (R630, R735).

Despite these challenges, Defendants, other than City World Toyota, substantially complied with the court's Order (R487, R739, R741, R746). Thus, "[o]n September 17, 2020, Defendants produced thousands [of pages] of additional documents" (R487). In all, Defendants produced 8,674 pages of documents. (R739; *see also*, R515-42 for earlier documents indicating 8,663 pages). At the next status conference on September 23, 2020, with Defendants' production in hand, Plaintiff raised no issue with discovery produced by Defendants (R47).

The lower court conducted another telephonic conference on December 9, 2020, during which it, among other things, set deadlines for depositions and post-deposition discovery demands, and extended deadlines for class certification. (NYSCEF Doc. No. 79, *see* fn. 3, *supra*). Again, although Plaintiff had much of Defendants' production for over a year, and had its last supplemental production for nearly three months, Plaintiff raised no issue with Defendants' production.

On December 17, 2020, Bergin was produced for her deposition as the corporate representative for all Defendants. (R564). She testified that she has worked for the Defendant-related entities, which operated under different names during different time periods, as a controller, since May 2012. (R568-73).

Bergin testified at length about the different Defendants and related non-parties. (R225-26, R426, R568-73). By way of example, she testified that Bronx Ford was a dealership owned by Harold Bendell and Bruce Bendell, that it had not been operational since 2013, and that City World Ford had succeeded it. (R567-568). With respect to City World Ford, she testified that it is owned by two trusts and Michael Rizzuto. (R569). She testified as to the different locations of different entities. (R569).[8]

Bergin further testified about the "massive amount of documents" produced in this action, where file folders were kept, who they were organized by, and what was done to find the documents, including "hard copy files." (R573, R592).

Plaintiff's counsel had a full and fair opportunity to ask Bergin about the entire production of documents. (R593-631).

---

[8] While Bergin did not testify extensively about Acquisition, she testified that it was operational, that she has never been paid by Acquisition, and that it is not a dealership. (R575, R576, R634, R635; *see also* R227). If Bergin could not distinguish among the various entities at times, that would not have been surprising as Lopez, herself, testified that "City World changed their name a lot" (R773, R834-36).

In fact, Bergin testified about a number of exhibits that Plaintiff's counsel marked at her deposition (R593-94, R605, R614, R618, R622, R629-30, R637). For example, Bergin explained commission sheets and testified that the commission sheets for City World Ford and for City World Toyota would be similar (R606). She also testified extensively about CAP Sheets, which she explained, contain data pertaining to the sale of a vehicle from information inputted by a sales manager and a finance manager. (R583). She answered numerous questions about the contents of CAP sheets. (R618-22).

Bergin also explained how certain documents identified the dealership to which it applied. (*See, e.g.*, R593, stating, "It says City World Ford on the top of the page", R594, stating, "It says Bronx Ford in the company"). Bergin also testified that "Bronx Ford Lincoln, Inc." (as referenced in a document) was not currently operational and that it referred to "Bronx Ford." (R593).

In addition, Bergin identified pay plans which she inferred were from City World Toyota based on the date of the document. (R593-95, R605-17).

For whatever reason, Plaintiff's counsel chose to question Bergin mostly about lower Bates-stamped documents, apparently foregoing significant questioning about the "thousands of additional documents" that Defendants produced in September 2020 (R487, R637). Nevertheless, Plaintiff's counsel clearly questioned Bergin about documents from the September 2020 production. (R605, R630).

Beyond this, Bergin testified at length about the operations of Defendants. For example, Bergin testified extensively about the car sale process and the duties of salespersons. (R578-80). In addition, she testified about the hiring process at City World Ford and City World Toyota (R584-85). She testified extensively about the commissions procedures and how commission are paid. (R586-87). She also testified about the payroll process (R598-99). As to Acquisition, Bergin testified that it was operational, that she has never been paid by Acquisition, and that it is not a dealership. (R227, R575, R576, R364, R635).

On January 29, 2021, Lopez moved for sanctions against Acquisition (R29-150). Acquisition opposed and cross-moved for, among other relief, a protective order and for dismissal of those causes of action against it (R151-381). Lopez replied and opposed the cross-motion (R383-467). Acquisition replied in further support of its cross-motion (R468-80). The Order pertaining to this motion is one of the Orders appealed from, and that motion is further described below.

On February 17, 2021, Defendants responded to Plaintiff's post-deposition document requests and interrogatories (R515-42, R688-710). Defendants' responses provided a fairly descriptive explanation of the documents produced, which included an explanation as to how Plaintiff could determine the entity which employed the anonymized individuals, including salespersons and others (*see, e.g.*, R530).

Thus, in response to an interrogatory asking Defendants to identify the employer of each anonymized individual, Defendants explained:

> Defendant affirmatively states that each separate identification number placed on Defendants' document production Bates stamped D867-D8663 corresponds to a separate individual who is or was employed by either City World Estate Auto Holdings, L.L.C. d/b/a City World Ford *or* City World Motors, L.L.C. d/b/a City World Toyota, but is not exclusively confined to salespersons. The face of each document identifies which of the two entities the individual was employed by, and any reference in the document to Bronx Ford Lincoln refers to City World Ford.

*Id. (Response No. 9).* In response to an interrogatory seeking information to determine whether the records of anonymized individuals in the production concerned salespersons, Defendants explained:

> Defendant affirmatively states that each separate identification number placed on Defendants' document production Bates stamped D867-D8663 corresponds to a separate individual who is or was employed by either City World Estate Auto Holdings, L.L.C. d/b/a City World Ford *or* City World Motors, L.L.C. d/b/a City World Toyota, but is not exclusively confined to salespersons, except for commission spreadsheets which have titles such as "Ford – Sales" (e.g., D982), but not commission spreadsheets which have titles such as "Ford – Finance" (e.g., D1051).

*Id. (Response No. 10).*

Defendants' production, Bergin's deposition, and Defendants' post-deposition discovery responses provided sufficient information for Plaintiff to determine the extent of the discovery produced and to make any additional inquiries she felt necessary.

On April 9, 2021, the court, by Justice Chan, held another telephonic conference (R711).

At that conference, the court ordered, among other things, that the parties "confer on whether to stipulate to the numerosity requirement based on plaintiff's purported evidence of 57 salespersons at the dealership" and if no agreement could be reached to "confer on the least burdensome means for defendant to provide discovery as to the number of salespersons at the dealership between June 2011 to present …" (R711). As to paper discovery, the "number of salespersons" at the dealership was the only inquiry.

On or about April 19, 2021, the case was transferred to Justice Nervo (NYSCEF Doc. No. 118, see fn. 3, *supra*).

On June 10, 2021, Justice Nervo followed up on the same subjects as the April 9, 2021 Order, and ordered the parties to either submit a stipulation "related to numerosity" or "meet and confer regarding documents related to numerosity by June 16, 2021 …." (R712).

A mere five days later, on June 15, 2021, Justice Nervo granted plaintiff's motion for sanctions against Acquisition by "striking" all "Defendants['] answer(s)," among other relief (R4-10). On July 16, 2021, Defendants timely filed their Notice of Appeal from that Order which is one of the subjects of this appeal and described further below (R2-3).

On June 29, 2021, Lopez moved for sanctions and to compel, this time, against all Defendants (R481-734). In her Notice of Motion, Lopez requested that the court deemed "resolved for purposes of Plaintiff's upcoming motion for class certification" three of the five elements, "numerosity, commonality and typicality …" (R481-82). Defendants opposed (R735-1818). Lopez replied (R1819-37). The Order pertaining to this motion is one of the orders appealed from; that motion is further described below.

On September 16, 2021, Justice Nervo granted plaintiff's motion for sanctions, among other relief, by deeming that "plaintiff has established the prerequisites of numerosity, commonality, typicality, *representation adequacy, and superior method* under CPLR §§ 901 and 902" and ordered Defendants to "exclusively bear the cost of this motion, including those costs and fees of plaintiffs' [*sic*] counsel" (R13-23) (emphasis added). On October 6, 2021, Defendants timely filed their Notice of Appeal from that Order which is one of the subjects of this appeal and described further below (R11-12).

### C. <u>Lopez's Motion to Sanction Acquisition and Acquisition's Opposition</u>

By notice of motion dated January 29, 2021, Lopez moved for an Order for sanctions against Acquisition, Ms. Bergin, and Defendants' counsel pursuant to CPLR § 3126 and 22 NYCRR § 130-1.1. (R29-30, R122, R137, R147).

Plaintiff alleged that Bergin committed perjury during her deposition as the corporate designee of Acquisition. (R143-47). Specifically, on December 17, 2020, Bergin testified that she held the title of controller for Defendants City Ford and City Toyota but did not have any title with respect to Defendant Acquisition (and that Defendant Bronx Ford is no longer operational). (R216, R221-R223, R227-R228, R564, R568). She also testified that Defendant Acquisition is not an automobile dealership.[9] (R227-R228, R577). Bergin also testified that she is not sure she could testify about what Acquisition does because it would require her to reveal attorney-client privileged communications and was so instructed not to. (R295).[10]

Bergin testified extensively about Defendants, City World Toyota, City World Ford and Bronx Ford over the course of nearly eight (8) hours. (R564-R636) (noting start time of 10:00 AM and end time of 5:43 PM).

By way of example, as to Bronx Ford, City World Ford, and City World Toyota, Bergin explicitly testified that each of those entities operated as dealerships (R567-69, R573, R588-89, R615).

[9] This is consistent with her prior testimony in the Discrimination Action on February 19, 2020. (R216, R222-23, R227-28 ("Q. Does [Acquisition] operate as an automobile dealership? A. No.")); *see also* R635).

[10] Bergin testified as to the Defendants' general corporate structure, its locations, name changes and restructuring over the years (e.g., R566-70). She testified as to her roles with the various entities over the course of approximately a decade (R573-74, R594, R756).

She testified concerning Lopez's employment with those Defendants (R577-78, R592-95); concerning how City World Toyota was managed (R570, R577, R579); who made decisions (R580, R582-83, R591-92, R596, R598); how commissions agreements were structured (R584-86, R588-89, R595).

As to Bronx Ford, Bergin testified that it has not been operational since 2013 (R567). Bergin, however, did not have expansive knowledge concerning Acquisition. (R566, R574-76, R590-91, R634-36). She answered numerous questions concerning Defendant Acquisition, including that it is currently operational, that it is not a dealership, that it does not sell anything she is aware of, that she has not been paid by, is not employed by, and does not do any work for, Acquisition, and that she does not know who owns Acquisition, among other facts (R575, R576, R634, R635; *see also* R295, R298, R306, R308-12).

However, without revealing attorney-client communications, she could not testify about Acquisition's corporate structure. (R575-76, R590-91, R635-36).

Accordingly, during Bergin's deposition, counsel for the parties had a dispute over Defendants' objection based on privilege. (*Id.*; *see also* R9).

As a result of this dispute, on January 29, 2021, Plaintiff noticed a motion for sanctions against Defendant Acquisition.[11] (R29-30).

---

[11] The remaining three (3) Defendants were not part of Plaintiff's motion.

In her motion for sanctions, Lopez, for the first time, submitted a May 31, 2013 declaration by Bergin in which she declared that she was, on May 31, 2013, a controller of Acquisition, together with non-parties HB Automotive Group, Inc. and Major Automotive Companies, Inc. (R29-R30, R115, R121-R150).

In her moving papers, Plaintiff argued that Bergin made false statements under oath about her knowledge of Acquisition (R143-47).

Plaintiff claimed that Bergin testified, "multiple times" that, outside of conversations she had with attorneys, she had no knowledge about Acquisition (R135, R129-37, R144-47).

Plaintiff sought relief in the alternative to sanctions for Acquisition to produce an adequate witness because Plaintiff argued that Bergin was an inadequate witness regarding Acquisition (R140-41, R150, R451-53).

Plaintiff referenced the 2013 declaration by Bergin and a 2017 affidavit by her in this action. (R135-36). The 2017 affidavit was submitted by Defendants' prior counsel in conjunction with a motion to dismiss, prior to the time City World Ford and City World Toyota were joined. (R119-20).

It lumps together Defendants Bronx Ford and Acquisition in stating that they are a dealership. *Id.*

In her motion papers, Plaintiff argued that Bergin submitted a declaration in federal court in 2013 regarding "her extensive knowledge of the company, its innerworkings, and its bookkeeping and financial practices," that she is the controller of Acquisition, and has knowledge of Acquisition's bookkeeping and recordkeeping systems and practices. (R135).

Plaintiff also raised the 2017 affidavit because Bergin averred there that Acquisition and Bronx Ford were "a dealership." (R136).

Based on the foregoing, Plaintiff characterized the 2013 declaration and 2017 affidavit as directly contrary to her testimony at her deposition (R145). Plaintiff submitted that Acquisition, Bergin, and its counsel engaged in a pattern of willful and contumacious conduct by engaging in perjury. (R142).

Acquisition opposed Plaintiff's motion and cross-moved for a protective Order and for dismissal based upon documentary evidence, failure to state a cause of action, and summary judgment, respectively.[12] (R151-52, R155).

Since Lopez's motion was directed only against Acquisition, the notice of cross-motion and the affirmation submitted by Acquisition in opposition and in support of the cross-motion explicitly reserved rights of the other Defendants, Bronx Ford, City World Ford, and City World Toyota (R152, R155).

[12] Defendants cross-moved for other relief which is not relevant to the instant appeal.

In opposition, Defendants submitted an affidavit from Bergin where she explained that the 2013 declaration lumped in numerous entities other than Acquisition and that it was an omission on her part and a drafting error on the part of the attorney. (R379-81). Further, Bergin explained in her 2017 affidavit, she failed to notice that Acquisition was sued. (R380-81). Bergin is not the only one who was consumed by the multiple, similar names and name changes, as Lopez, herself, testified that "City World changed their name a lot," (R773, R834-37) and that she does not know why Acquisition was sued and that she lets her lawyers "do that legality" (R836-37).

On reply, Plaintiff argued that the foregoing explanations were insufficient and that the court attorney, on a call with counsel during Bergin's deposition, had nonetheless required a response to the questions objected to on the basis of privilege. (R440-46). Defendants submitted a reply in further support of their cross-motion. (R468-80).

### D. The June 2021 Order Appealed From

On June 16, 2021, the Supreme Court, New York County (Nervo, J.) granted Lopez's motion for sanctions – but went beyond what Lopez requested – finding that striking all Defendants' pleadings was warranted because "Bergin, testified that she had no knowledge of the business of defendants and/or would not answer such questions on the basis of attorney-client privilege." (R7).

The lower court also noted that Ms. Bergin testified that: (i) she was never employed by Acquisition; (ii) Acquisition was not a car dealership; and (iii) she was unaware of Acquisition's corporate structure. (R7). The lower court observed that in a May 13, 2013 affidavit submitted in a federal case, Bergin declared that she was the controller of Acquisition, was familiar with Acquisition's bookkeeping, and that Acquisition was in the business of selling, buying, and servicing vehicles. (R7).

The lower court also noted a 2017 affidavit that had been prepared by Defendants' prior counsel in which Bergin stated that "City World is *an automobile dealership* that is engaged in the business of selling new and used automobiles, such as Ford and Toyota vehicles." (R7-8, R119-R120) (emphasis added).[13]

Because these "sworn affidavits" conflicted with her testimony concerning Acquisition and because Bergin "later refus[ed] to answer questions" regarding Acquisition when instructed by her counsel not to do so on the grounds of attorney-client privilege, the lower court concluded that "defendant has testified falsely with the willful intent of providing false or misleading evidence[,]" that the "record is sufficient to adduce an 'utter disregard for the judicial process[,]'" and that "such abhorrent behavior is sanctionable under CPLR § 3126, and as contempt …." (R8).

[13] In that affidavit, "City World" was a defined term to, collectively, identify Bronx Ford and Acquisition (R119-20).

The lower court found that Bergin committed "demonstrable perjury" that was "incurable by monetary sanctions or further depositions." (R8). The lower court then proceeded to strike the pleadings of Acquisition and also, curiously, all the other Defendants despite the fact that: (i) Plaintiff did not move for sanctions against the other Defendants; and (ii) there is nothing in the record to support a finding that the other Defendants committed perjury. (R8).

### E. Lopez's Subsequent Motion to Sanction Defendants Related to Discovery and Defendants' Opposition

On the heels of Justice Nervo's Order striking the answers of all Defendants, Lopez, by notice of motion dated June 29, 2021, moved for sanctions against all Defendants. (R481-82). Lopez's motion papers characterized the orders of Justice Chan as orders that were issued due to Defendants' continued failures to produce or deficiencies in production – rather than as orders issued at status conferences due to Lopez's own refinements and additional, more specific demands as set forth above (R483, R485-87, R719-23). Lopez argued in her motion that Defendants refused to produce documents regarding the commission compensation structure and computation of commissions for salespersons employed at the City World Toyota dealership and failed to identify the number of salespersons it employed at its various dealerships, and that had Defendants done so, Plaintiff would possess evidence to easily and clearly establish the numerosity, commonality, and typicality elements of class certification. (R726-27).

In support of her arguments, Plaintiff referred to the August 2019 Order and argued that Defendants failed to produce documents in accordance therewith, and that subsequent Orders dated January 8, 2020, March 11, 2020, and July 14, 2020 "again directed Defendants to produce the documents agreed upon in the Stipulation." (R721-R722). Plaintiff also pointed to a conditional order in the July 14, 2020 Order, which related solely to CAP sheets. (R722).

Plaintiff also argued that Defendants refused to identify the number of salespersons employed by each Defendant at each dealership during the relevant statutory period, relying on a June 10, 2021 Order. (R723). Based on the foregoing, Plaintiff sought an Order deeming the issue of class certification resolved as to the numerosity, typicality, and commonality elements. (R727).

Lopez acknowledged that she received extensive discovery concerning City World Ford (R487). She conceded that there were records concerning at least 57 salespersons that had been employed by City World Ford from 2011 through 2019. (R490). The crux of Lopez's motion centered around the lack of production concerning City World Toyota. (R721-22, R726-28).

As noted above, Bronx Ford and City World Ford, where Lopez had been employed for five years from 2012 through 2017, clearly produced extensive documentation. (R487, R515-42, R739).

In her motion papers, Lopez failed to identify deficiencies of any Defendant other than those related to City World Toyota's production. (R714-34). Crucially, Lopez first raised this issue on April 29, 2021, approximately seven (7) months after Defendants supplemented their production in September 2020 pursuant to the July 2020 Order. (R548, R547, R546).

**F. <u>The September 2021 Order Appealed From</u>**

The Supreme Court, New York County (Nervo, J.) granted Lopez's motion for sanctions – and again went beyond what Lopez requested. (R14-R23).

The lower court's September 16, 2021 Order (the "September 2021 Order") stated that "plaintiff sought from defendants, *inter alia*, discovery related to numerosity of potential plaintiffs, responses to various interrogatories related to class certification requirements, and records of Defendants' financial/corporate structure" (R17). The lower court held that "[t]he demanded discovery is inarguably material to the purported class action alleging, *essentia*, that the various related corporate defendants failed to pay employees in accordance with the applicable wage laws, and that such discovery is indeed essential for Plaintiff to establish the requirements for class certification under §§ 901 and 902." (R17).

The lower court noted that Defendants did not at any prior time seek a protective Order. (R18). The lower court, without explaining its reasoning, concluded that compelling disclosure would be insufficient. (R18-19).

It also concluded that Defendants had a "propensity to withhold or otherwise adulterate evidence." (R19). Again, the lower court did not articulate how it came to this conclusion. The court found that "defendants have demonstrated they will continue their attempts to withhold evidence necessary to plaintiff's burden to establish the prerequisites to class action certification despite orders compelling same." (R19). The lower court found that "compelling disclosure an insufficient remedy and that defendants are likely to withhold evidence in contravention of any such order." (R19). Based on its conclusions, the lower court imposed a "monetary sanction" and deemed *all* the prerequisites for class certification established as against all Defendants, rather than three of the five as Plaintiff requested. (R19).

## STANDARD OF REVIEW

On review of an exercise of discretion by the lower court, "the Appellate Division is vested with its own discretion and … power to substitute its own discretion for that of the trial court, even in the absence of abuse." *Those Certain Underwriters at Lloyds, London v. Occidental Gems, Inc.*, 11 N.Y.3d 843, 845 (2008). Defendants respectfully submit that the lower court abused its discretion and its decisions, dated June 15, 2021 and September 16, 2021, respectively, should be reversed.[14]

[14] Defendants respectfully submit that their appeals of each of the June 16, 2021 and September 16, 2021 Orders are hereby perfected together, as they are permitted to be consolidated as of right. *See* 22 NYCRR § 1250.9(f)(3); *see also* 22 NYCRR § 600.1(a).

## LEGAL STANDARD

In both motions dated January 29, 2021 (Acquisition only)[15] and July 16, 2021 (all Defendants), Plaintiff moved for sanctions under CPLR § 3126, which provides:

> If any party…refuses to obey an order for disclosure or willfully fails to disclose information which the court finds ought to have been disclosed pursuant to this article, the court may make such orders with regard to the failure or refusal as are just, among them:
>
> 1. an order that the issues to which the information is relevant shall be deemed resolved for the purposes of the action in accordance with the claims of the party obtaining the order; or
> 2. an order prohibiting the disobedient from supporting or opposing designated claims or defenses, from producing in evidence designated things or items of testimony, or from introducing any evidence of the physical, mental or blood condition sought to be determined, or from using certain witnesses; or
> 3. an order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or any part thereof, or rendering a judgment by default against the disobedient party.

With respect to the lower court's Order dated June 16, 2021 striking all Defendants' pleadings under CPLR § 3126, it is well-settled that actions should be decided on their merits whenever possible and the "drastic" and "extreme" remedy of striking pleadings should be invoked only when it has been "conclusively demonstrated" that the complained-of conduct was willful, contumacious, or in bad faith. *See Nugent v. City of New York*, 2019 NY Slip Op 32410(U) (N.Y. Sup. Ct. 2019) (denying

[15] The lower court incorrectly stated: "Plaintiff moves for sanctions against defendants, pursuant to CPLR § 3126 and 22 NYCRR § 130-1.1." This statement is incorrect on two points: (1) Plaintiff moved for sanctions only against Acquisition, not the other Defendants; and (2) Plaintiff moved for sanctions under CPLR § 3126, and for attorney's fees and costs under 22 NYCRR § 130.1.1.

plaintiff's motion for an order striking defendant's answer where plaintiff had not demonstrated that defendant's failure to comply with discovery was willful and contumacious, as defendant had offered an excuse) (*citing McGilvery v. New York City Transit Auth*., 213 A.D.2d 322, 324 (1st Dept. 1995) ("the drastic remedy of striking a party's pleading pursuant to CPLR § 3126 for failure to comply with a discovery order or request is appropriate only where the moving party conclusively demonstrates that the non-disclosure was willful, contumacious or due to bad faith")); *see also Delaney v. Automated Bread Corp.*, 110 A.D.2d 677 (2d Dept. 1985) ("The penalty of striking a pleading for failure to comply with an order of disclosure… is an extreme one which is warranted only where the failure has been willful or contumacious").

It is the movant's burden to establish willful conduct. *Id.; see also, Williams v. City of NY*, 174 A.D.3d 834, 835 (2d Dept. 2019) (citations omitted). Plaintiff failed to satisfy this burden.

As fully outlined below, the sole basis for the lower court's decision to strike Acquisition's pleadings[16] was Bergin's supposed "perjurious conduct" concerning her testimony about Acquisition during her deposition on December 8, 2020.

[16] The lower court's decision actually ordered that all Defendants-Appellants' pleadings be struck. The grossly unjust application of that penalty to the non-Acquisition Defendants is discussed herein in Part I(A).

However, Acquisition provided a reasonable explanation for Bergin's conflicting testimony and the record does not establish any perjury. Thus, application of the legal standard set forth above makes clear that striking the pleadings was a gross abuse of the lower court's discretion.

With respect to the lower court's Order dated September 16, 2021 granting class certification as a sanction for discovery violations, CPLR § 3126 provides that the court may make "an order that the issues to which the information is relevant shall be deemed resolved for purposes of the action in accordance with the claims of the party obtaining the order" or an "order prohibiting the disobedient party from supporting or opposing designated claims or defenses." *See* CPLR § 3126(1) and (2). Of course, the degree of penalty to be imposed is a matter of discretion. *See, e.g. Zletz v. Wetanson*, 67 N.Y.2d 711, 713 (1986); *Kubacka v. Town of N. Hempstead*, 240 A.D.2d 374, 375 (2d Dept. 1997).

However, a preclusion order (or order deeming issues resolved) should be limited to only that for which particulars have not been furnished because further relief would "deprive[] the defendants of their day in court and gives the plaintiff more relief than is warranted." *Northway Eng'g v. Felix Indus.*, 77 N.Y.2d 332, 337 (1991) (concerning CPLR 3042) (also stating, "'the punishment here should fit the crime, precluding only as to that for which particulars have not been furnished'") (*quoting* Siegel, Practice Commentaries, op. cit., C3042:5, at 530).

As similarly stated in *Landrigen v. Landrigen*, 173 A.D.2d 1011 (3d Dept. 1991):

> The general rule is that a court should only impose a sanction commensurate with the particular disobedience it is designed to punish, and to go no further. Moreover, a court should strive to avoid a sanction which will adversely affect the interest of an innocent party.

*Id.*, 173 A.D.2d at 1012, (affirming lower court's limited preclusion); *Rossal-Daub v. Walter*, 58 A.D.3d 992, 994 (3d Dept. 2009) (same, finding "total preclusion … was not warranted"). Here, as fully outlined below, the lower court also abused its discretion in granting class certification as a sanction and deeming each element met.

## ARGUMENT

### I. THE LOWER COURT, IN ITS JUNE 2021 ORDER, IMPROVIDENTLY EXERCISED ITS DISCRETION IN STRIKING THE ANSWERS OF ALL DEFENDANTS

#### A. The Court Abused Its Discretion in Ordering, *Sua Sponte*, that the Pleadings of Defendants Other than Acquisition Be Stricken

The lower court also abused its discretion when it ordered, *sua sponte*, that the pleadings of Defendants Bronx Ford, City World Toyota, and City World Ford (the "Non-Acquisition Defendants") be stricken, when Plaintiff never filed any motion for sanctions against those entities. Plaintiff did not argue that those entities committed any wrongdoing, and the court made no findings of wrongdoing against them. In fact, the only party to this case against which Plaintiff sought sanctions was Acquisition.

Under CPLR § 2214(a), "[a] notice of motion *shall* specify the time and place of the hearing on the motion, the supporting papers upon which the motion is based, *the relief demanded and the grounds therefor*." *Id.* (emphasis added).

Here, the notice of motion stated that Plaintiff sought "sanctions against Defendant City World Acquisition Group, Inc. ("City World Acquisition"), City World Acquisition's corporate representative, Christine Bergin ("Bergin"), and the law firm for Defendants…pursuant to CPLR § 3126 and 22 NYCRR § 130-1.1, and granting such other and further relief as the Court may deem just and proper."

While a court may grant relief it deems "just and proper" beyond that sought in the motion, it cannot grant relief that is "dramatically unlike" the relief sought, as discussed below. *USAA Fed. Sav. Bank v. Calvin*, 145 A.D.3d 704 (2d Dept. 2016).

While the degree of penalty to be imposed is a matter of discretion (*see, e.g. Zletz v. Wetanson*, 67 N.Y.2d at 713; *Kubacka*, 240 A.D.2d at 375, a preclusion order (or order deeming issues resolved) may not "deprive[] the defendants of their day in court and give[] the plaintiff more relief than is warranted." *Northway Eng'g*, 77 N.Y.2d at 337 (concerning CPLR 3042) (also stating, "'the punishment here should fit the crime, precluding only as to that for which particulars have not been furnished'") (*quoting* Siegel, *Practice Commentaries*, op. cit., C3042:5, at 530).

As similarly stated in *Landrigen*, 173 A.D.2d at 1012:

> The general rule is that a court should only impose a sanction commensurate with the particular disobedience it is designed to punish,

> and to go no further. Moreover, a court should strive to avoid a sanction which will adversely affect the interest of an innocent party.

(affirming lower court's limited preclusion); *see also Rossal-Daub v. Walter*, 58 A.D.3d at 994 (same, finding "total preclusion … was not warranted").

While the court may have certain inherent powers under CPLR § 3126 and 22 NYCRR § 130-1.1 to issue sanctions *sua sponte*, the court made no finding that the Non-Acquisition Defendants engaged in frivolous conduct within the meaning of and as required by 22 NYCRR § 130-1.1.

1. The Non-Acquisition Defendants Were Deprived of Due Process

It is axiomatic that "due process protections … should apply when CPLR § 3126 is invoked. Given the seriousness of the potential sanctions for discovery noncompliance, notice and an opportunity to be heard are desirable….In furtherance of the policy favoring resolution of actions on the merits, the drastic remedy of striking a party's pleadings should only be imposed when the discovery noncompliance was willful, contumacious or in bad faith…." *See Postel v. New York Univ. Hosp.*, 262 A.D.2d 40, 42 (1st Dept. 1999); *see also Corner Realty 30/7 Inc. v. Bernstein Mgmt. Corp.*, 249 A.D.2d 191, 193 (1st Dept. 1998). Here, the Non-Acquisition Defendants were deprived of due process because they were not targeted in Plaintiff's motion for sanctions, there was no evidentiary hearing, and they were given no notice whatsoever of the court's intention to strike their pleadings.

Accordingly, in the absence of due process, the court's order striking the Non-Acquisition Defendants' pleadings cannot stand.

2. The Court Failed to Give the Non-Acquisition Defendants Prior Notice Before Striking Their Pleadings

In *Matter of Fernandez v. Nigro,* 178 A.D.3d 703 (2d Dept. 2019), the court noted with disapproval that "[t]he Supreme Court's *sua sponte* determination to impose sanctions here was made without notice to the parties." Likewise, in *Oppedisano v. Oppedisano*, 138 A.D.3d 1080, 1081 (2d Dept. 2016), the court held:

> Furthermore, the court improvidently exercised its discretion in imposing sanctions against the plaintiff …for filing a CPLR article 78 proceeding... The court did not give the plaintiff …a reasonable opportunity to be heard as to whether this conduct constituted frivolous conduct subject to sanctions. …[T]he court, *sua sponte*, imposed sanctions …without giving the plaintiff…notice that [he] could be sanctioned for such conduct, and without giving [him] an opportunity to be heard on such allegations."

*Id.* at 522.

Here, the Non-Acquisition Defendants were given absolutely no notice whatsoever – by the court, which did not warn them, or by Plaintiff, who did not target them in her motion – that their pleadings would be struck. In the absence of such notice, the court abused its discretion in striking those parties' pleadings.

3. The Lower Court Abused Its Discretion by Awarding Relief Well Beyond the Scope of the Motion for Sanctions

A court may not award relief that is dramatically different from the relief sought on a motion:

> The court may grant relief that is warranted pursuant to a general prayer for relief contained in a notice of motion if the relief granted is not too dramatically unlike the relief sought, the proof offered supports it, and there is no prejudice to any party.

*USAA Fed. Sav. Bank*, 145 A.D.3d at 706. Where the court, *sua sponte*, provides relief that is different than the relief sought, or otherwise prejudicial, it is an improvident exercise of discretion. *Id.; see also, e.g., JPMorgan Chase Bank, N.A. v. Klein*, 178 A.D.3d 788, 790 (2d Dept. 2019); *U.S. Bank N.A. v. Halevy*, 176 A.D.3d 1009, 1010 (2d Dept. 2017); *Tsai v. Hernandez*, 284 A.D.2d 116, 117 (1st Dept. 2001) (reversing dismissal of action under CPLR § 3126 as "improvident" and noting "that the court granted relief not requested").

Here, as to the first factor cited in *USAA Fed. Sav. Bank v. Calvin*, the lower court went beyond just awarding relief that was dramatically different from the relief sought – it actually awarded relief against parties where *no relief was sought against them at all*. Again, as stated above, Plaintiff did not seek sanctions against Bronx Ford, City World Toyota, or City World Estate Ford. The court, *sua sponte* and without notice to those defendants, struck their pleadings due to improper conduct it deemed committed by Acquisition.

As to the second factor, no proof whatsoever was offered in support of awarding sanctions against the non-Acquisition Defendants. Plaintiff did not make even the slightest proffer of any evidence in support of such sanctions, let alone any "proof" of any improper conduct by the non-Acquisition Defendants.

As to the third factor, there is – obviously – the highest possible degree of prejudice to the non-Acquisition Defendants as a result of the lower court's order. Their pleadings have been struck, and they are in default and cannot raise a defense to any of Plaintiff's claims. No act by a court could be more prejudicial than that. *See Corner Realty 30/7 Inc.*, 249 A.D.2d at 193 ("CPLR § 3126 provides various sanctions for violations of discovery orders, the most serious of which are striking a party's pleadings or outright dismissal of the action").

Accordingly, the lower court abused its discretion in striking the pleadings of the non-Acquisition Defendants.

### B. The Court Abused Its Discretion in Striking Defendants' Pleadings Based on its Erroneous Conclusion that Defendants' Corporate Representative Committed Perjury as to Acquisition

#### 1. There Was No Disclosure Violation as to Acquisition

Under the explicit language of CPLR § 3126 (quoted above), an order striking pleadings must be based upon a finding of a refusal to obey a disclosure order or willful failure to disclose information. It is a last resort remedy, as is made clear by its placement as the final option among the remedies listed in CPLR § 3126. *See Corner Realty 30/7 Inc.*, 249 A.D.2d at 193 ("CPLR § 3126 provides various sanctions for violations of discovery orders, the most serious of which are striking a party's pleadings or outright dismissal of the action").

To invoke the sanction of striking pleadings, a higher standard must be met as discussed above; it is a "drastic" and "extreme" remedy that may be invoked only when it has been "conclusively demonstrated" that the complained-of conduct was willful, contumacious, or in bad faith. *Nugent* at *4; *McGilvery* at 324; *Delaney* at 678. The lower court, however, made no such findings against Acquisition. Not only were there no findings of disclosure violations by the lower court, there were, in fact, no disclosure violations whatsoever. There was no refusal to obey a disclosure order, as no such order was ever issued by the Court.

Nor was there any willful failure to disclose information by Acquisition. Bergin testified that Acquisition was operational (R97, R634). She testified that she was not employed by Acquisition (R635). Bergin further testified that she had never performed any work for Acquisition (*id.*). She also provided the address (to her knowledge) of Acquisition and stated that it was not a dealership and did not sell anything. (*Id.*). She testified that she did not know whether Acquisition entered into contracts. (R636), whether Harold Bendell or Bruce Bendell were "involved" in Acquisition,[17] (*Id.*) or who owned it (R635). She also testified that she never spoke to anyone from Acquisition. (*Id.*).

[17] Possibly, Bergin was confused by this question, as counsel did not explain the meaning of the word "involved" and did not ask a straightforward question, such as whether the Bendells were directors, officers, or employed by Acquisition.

Thus, Bergin answered substantive questions about Acquisition. To the extent that she was unable to answer certain questions because she simply did not know the answer, she said so. There was no willful failure to disclose information by Acquisition. While the court noted in its decision that "Bergin[] testified that she had no knowledge of the business of defendants and/or would not answer such questions on the basis of attorney-client privilege," (R7), this is inconsistent with the record which establishes Bergin testified that:

- Acquisition was currently operational (R575, R634);
- Acquisition was not a car dealership (R635);
- Acquisition does not sell anything (R635-36);
- Acquisition has never employed her (R635);
- Acquisition has never paid her (R575);
- She has never performed work for Acquisition (R635);
- 3333 Boston Road is the address for Acquisition (R635); and
- She did not know who owns Acquisition (R635)

Thus, Bergin provided information about Acquisition at her deposition. While she did not know the answer to every question posed, she offered numerous facts – the most salient of which was arguably the fact that Acquisition is not a dealership and thus could not be an employer of Plaintiff and owe her wages. In any event, in order to remedy any apparent deficiency, the court could have simply ordered Acquisition to produce a witness with adequate knowledge of the business. *See, e.g., Saxe v. City of New York*, 250 A.D.2d 751, 752 (2d Dept. 1998).

Resorting to striking the pleadings was an inappropriate remedy for Acquisition's producing a witness with, arguably, inadequate knowledge of Acquisition. Also, as stated above, Bergin testified extensively about the other Defendants, *supra* at 13-15.

Clearly, in lieu of the extreme remedy of striking Acquisition's pleadings, the court had other options under CPLR § 3126, which it should have employed before reaching for the "last resort" of striking the pleadings, as the high standard for awarding that drastic and extreme remedy was not met here.

Accordingly, under the explicit language of CPLR § 3126 and the high standard applicable to striking pleadings, there was no basis upon which to strike the pleadings.

2. There Was Also No Willful Misconduct

The lower court based the striking of Acquisition's pleadings solely on Bergin's supposed perjury,[18] finding that she "testified falsely with the willful intent of providing false or misleading evidence."

[18] As stated in the Statement of Facts above, Plaintiff argued in her moving papers below that Bergin perjured herself by testifying "that, outside of conversations she has had with attorneys, she has no knowledge of what [Acquisition] does or how many employees they have, that she does not know who owns [Acquisition], that she has never done any work for [Acquisition], and that she was never employed by [Acquisition]." (R135).

The court made no finding that false testimony was conclusively demonstrated, as willful conduct *must* be to warrant striking the pleadings. *See McGilvery,* 213 A.D.2d at 324 ("It is well-settled that the drastic remedy of striking a party's pleading pursuant to CPLR § 3126 for failure to comply with a discovery order or request is appropriate only where the moving party conclusively demonstrates that the non-disclosure was willful, contumacious or due to bad faith").

However, Plaintiff did not even come close to establishing perjury. Rather, Plaintiff simply leaped to the conclusion that, where affidavits and later deposition testimony conflict, then (a) the affiant/deponent must have perjured herself, and (b) the perjury must have been committed at the deposition, as the affidavits must somehow be assumed to be fully accurate. The lower court apparently jumped to this same, unfounded conclusion.

Under Penal Law § 210.10, "a person is guilty of Perjury…when that person swears falsely and when his or her false statement is made in a subscribed written instrument for which an oath is required by law, and is made with intent to mislead a public servant in the performance of his or her official functions, and is material to the action, proceeding or matter involved." *Id.* Here, Bergin made no false statements at her deposition; rather, she made errors in the 2013 declaration and 2017 affidavit, which she explained in her 2021 affidavit and would have explained at her deposition had she been presented with the affidavits.

But even if the court below determined that Bergin made false statements regarding Acquisition at her deposition, such statements were not material to the action, as Acquisition never employed Plaintiff (R635), and the statements were not made with intent to mislead a public servant. *See People v. Uhrey*, 169 Misc. 2d 1015, 1018 (Sup. Ct. Kings Cty. 1996); *People v. Nunez,* 160 A.D.3d 1227 (3d Dept. 2018).

Further, regarding willful misconduct, the Second Circuit Court of Appeals, in *Berner v. British Commonwealth Pacific Airlines*, 346 F.2d 532, 536-37 (2d Cir. 1965), quoted with approval from its earlier decision in *Pekelis v. Transcontinental & Western Air*, 187 F.2d 122, 124 (2d Cir. 1951), held:

> [W]illful misconduct is the intentional performance of an act with knowledge that the performance of that act will probably result in injury or damage, or it may be the intentional performance of an act in such a manner as to imply reckless disregard of the probable consequences [or] the intentional omission of some act, with knowledge that such omission will probably result in damage or injury, or the intentional omission of some act in a manner from which could be implied reckless disregard of the probable consequences of the omission.

The keys to the above definition are intent and knowledge that the act in question will probably result in injury or damage. *See id*. Here, there was no intentional performance or omission at Bergin's deposition that she knew would result in any damage or injury. In fact, no damage resulted from the discrepancies in Bergin's testimony regarding Acquisition – nor was any such damage probable, or even plausible.

Acquisition never employed Plaintiff, nor did she testify that it did. (R836-37). As Bergin testified, Acquisition is not even a car dealership (R634-36). Thus, Plaintiff was in no way damaged by Bergin's conflicting testimony regarding Acquisition, which testimony is discussed further below. Bergin therefore did not engage in any willful misconduct at all, and willful misconduct certainly was not "conclusively demonstrated."

Accordingly, the striking of Acquisition's pleadings should be reversed.

3. Bergin Offered Plausible Alternative Explanations for the Discrepancies Between Her Testimony and Her Prior Statements as to Acquisition

As the Court of Appeals has held, there is no egregious conduct upon which to base striking the pleadings where "the offending party offers 'equally plausible alternative explanations' for discrepancies in testimony." *See CDR Creances S.A.S. v. Cohen*, 23 N.Y.3d 307, 320 (2014) (*citing Zimmerman v. Poly Prep Country Day Sch.*, 2012 U.S. Dist. LEXIS 78816, *109 (E.D.N.Y. 2012)). In *Zimmerman*, the court considered the question of whether, by allegedly committing perjury in several depositions in a case in which a school was accused of concealing sexual abuse of students by a football coach, defendant had perpetrated a fraud on the court.[19]

[19] We note that the instant case is not one in which "fraud on the court" (i) was found below or (ii) exists. The only misconduct found by the lower court was perjury at a deposition (which, as discussed herein, did not take place as Bergin's deposition was truthful). *See Gleason v. Jandrucko*, 860 F.2d 556, 559-60 (2d Cir. 1988) ("'fraud upon the court' as distinguished from fraud on an adverse party is limited to fraud which seriously affects the integrity of the normal process of adjudication" and "neither perjury nor nondisclosure, by itself, amounts to anything more than fraud involving injury to a single litigant"); *A.I.A. Holdings, S.A. v. Lehman Bros.*, 2002

The court in *Zimmerman*, determining that an evidentiary hearing was needed, held:

> "At this stage, it is impossible for the Court to determine whether there has been a fraud committed upon the court by defendants in an effort to limit plaintiffs' access to information….Although plaintiffs contend that defendants….have attempted to mislead the court through perjured testimony, …defendants have offered equally plausible alternative explanations for the discrepancies in testimony…."

*See Zimmerman* at 109; *see also Casanas v. Carlei Group LLC*, 149 A.D.3d 515 (1st Dept. 2017) (finding that the reasonable excuse offered by the offending party supported a finding that there was no indication of bad faith warranting the imposition of sanctions).

Indeed, where a defendant offers an explanation for a failure to disclose information under CPLR § 3126: "It is well-settled that a court should not resort to striking an answer for failure to comply with discovery directives unless noncompliance is clearly established to be both deliberate and contumacious. Moreover, even where the proffered excuse is less than compelling, there is a strong preference in our law that matters be decided on their merits." *Catarine v. Beth Israel Med. Ctr.*, 290 A.D.2d 213, 215-216 (1st Dept. 2002) ("Defendant having set forth both a reasonable excuse for its failure to comply with the court's order and a

WL 1271722, at *2 (S.D.N.Y. May 29, 2002) (finding no fraud on the court even though "defendants have made some showing that the two documents submitted by plaintiffs in support of their motion for summary judgment may well have been doctored").

meritorious defense to the action against it, Supreme Court improvidently exercised its discretion in striking the answer") (internal citations omitted).

Plaintiff agrees that this is the applicable standard, stating in her moving papers before the lower court: "It can be inferred that a party's conduct is willful and contumacious when it repeatedly fails to comply with discovery demands and court orders compelling disclosure *without providing a reasonable excuse* for noncompliance.'" (R138, *quoting Northfield Ins. Co. v. Model Towing & Recovery*, 63 A.D.3d 808, 809 (2d Dept. 2009) (emphasis added).

Plaintiff cites additional "reasonable excuse" cases later in their moving papers (R139). In opposing the motion for sanctions, Acquisition offered an alternative explanation to the charge of perjury in the form of Bergin's testimony, by affidavit sworn to on March 3, 2021. She explained that Acquisition was inadvertently "lumped in" on a list of entities that were "selling, buying, and servicing cars." (R379-81). She also stated that Acquisition is not a dealership and that this was "an omission on [her] part and a drafting error on the part of the attorney who drafted [the 2013 Affidavit]." *Id.* at ¶¶ 9-11. Similarly, regarding her 2017 affidavit, Bergin explains that she failed to notice the reference to Acquisition, which was "the wrong company" for Plaintiff because Acquisition never employed Plaintiff. *Id.* at ¶¶ 14-21.

Bergin's failure to notice the references to Acquisition in the 2013 declaration and 2017 affidavit is understandable, and the explanation certainly plausible, due to the multitude of "City World" entities, including City World Motors, LLC and City World Estate Auto Holdings, L.L.C., City World Imports, L.L.C., in addition to City World Acquisition. (*See e.g.*, R225-26, R426). Indeed, Plaintiff herself could not distinguish among the various Defendants and entities.

Thus, at her deposition, Plaintiff answered as follows:

> Q. In this lawsuit, you are suing concerning your pay and commissions, correct? A. Yes.
> Q. And the suit is concerning your pay and commissions while working at City World Ford and City World Toyota, correct? A. Yes.
> Q. And City World Ford and City World Toyota are two separate dealerships, correct? A. Yes.
> Q. However, I will represent to you that this complaint currently has four different defendants. Are you aware of that?
> A. I don't know what you mean.
> Q. Well, I'll represent to you that on the face of the operative complaint, there are four defendants: Bronx Ford, Inc., City World Motors LLC, City World Acquisition Group LLC and City World Estate Auto Holdings LLC… A. *Well, City World changed their name a lot, so I don't know.*
> Q. Okay. If I told you that City World Motors LLC was the corporate name for City World Toyota, would you have any reason to dispute that?... A. I don't know.
> Q. And if I told you that city World Estate Auto Holdings LLC is the corporate name for City World Ford, would you have any reason to dispute that either?... A. I don't know. Like, I said, they changed their name various times. So I don't know what's what at this point. I don't know.

***

> Q. Why is it that you included City World Acquisition Group LLC in this lawsuit? A. I don't know. I let my lawyers do all of that legality. I don't know.

(R280-82) (emphasis added).

Accordingly, Bergin's proffered explanation in her 2021 affidavit (for her previous, conflicting testimony in her 2013 declaration and 2017 affidavits) about being confused and mistaking City World Acquisition for other City World entities – is a plausible explanation. Since Acquisition offered a plausible alternative explanation to counter the accusation of perjury, it was an improvident exercise of the lower court's discretion to strike Acquisition's pleadings.

4. Bergin Did Not Commit Perjury

As noted above, the lower court based its decision to strike Acquisition's pleadings entirely on Bergin's alleged perjury.

The decision explicitly stated, "[T]he Court finds that defendant [Acquisition] has testified falsely with the willful intent of providing false or misleading evidence….Accordingly, the court finds striking defendants' pleadings the only appropriate sanction, given the defendants'[20] perjury."

[20] The court refers to all Defendants here, when in fact Bergin was only accused of perjury in connection with her testimony as the representative for Acquisition.

At her December 2020 deposition, Bergin testified that she was not employed by Acquisition, nor had she ever done any work for Acquisition (R635). There is nothing in the record to establish that this testimony was, in fact, false.

The lower court apparently concluded that, because Bergin's deposition testimony conflicted with the statements in her 2013 declaration and 2017 affidavit, those statements must have been correct and the deposition testimony untruthful. This defies logic – it completely fails to account for the obvious possibility that the 2013 declaration and 2017 affidavit could have been inaccurate, and the deposition testimony accurate, as explained in Bergin's 2021 affidavit. In fact, Plaintiff never even questioned Bergin about the 2013 declaration or 2017 affidavit at her deposition, which robbed her of any opportunity to explain any apparent conflict between the affidavits and her deposition testimony.

If she had been given the opportunity at her deposition to explain the testimony she gave in the 2013 declaration and 2017 affidavit, Bergin could have reconciled the apparent differences. But, Plaintiff did not question Bergin about these inconsistencies, or even refer to them at all. Nor did Plaintiff avail herself of any of the post-deposition discovery tools at her disposal, such as a notice to admit or supplemental interrogatories, to clarify any apparent conflict. As a result, the only explanation of the discrepancies before the lower court was Bergin's 2021 affidavit.

The lower court's conclusion that Bergin committed perjury fails to account for the "equally plausible alternative explanations" that are not perjurious.

Accordingly, the lower court's decision to strike the pleadings of the Defendants was an improvident exercise of its discretion.

5. Even If Perjury Was Committed (Which It Was Not) It Was an Isolated <u>Instance Not Sufficient to Warrant Striking Defendants' Pleadings</u>

Even if this Court were to agree with the lower court that Bergin committed perjury, the Court of Appeals has found that "isolated instances of perjury about matters not central to the issues in the case" are not sufficient to warrant striking a party's pleadings. *See CDR Creances S.A.S.*, 23 N.Y.3d at 320 (the sanction of striking an answer is "an extreme remedy that 'must be exercised with restraint and discretion'"); *see also Rezende v. Citigroup Global Mkts., Inc.*, 2011 U.S. Dist. LEXIS 45475, *17 (S.D.N.Y. 2011) ("case dispositive sanctions are not appropriate [where] the fraud was not central to the substantive issues in the case"); *Gray v Tri-State Consumer Ins. Co.*, 2015 NY Slip Op 32318(U), 5 ("The striking of a party's pleadings is inappropriate where the fraud is not central to the substantive issues in the case or where, as here, the court is presented with an isolated instance of perjury, standing alone, which fails to constitute a fraud upon the court") (internal quotations and citations omitted).

The issues of whether Bergin was employed by or performed work for Acquisition and whether she was aware of its corporate structure – the issues upon which the lower court asserted that she perjured herself at her deposition – are in no way central to the issues in this case. This is a wage-and-hour case.

In fact, as noted earlier, Plaintiff testified at her deposition:

> Q. And the suit is concerning your pay and commissions while working at City World Ford and City World Toyota, correct?
> A. Yes.

(R280).

Plaintiff has not proffered any evidence that Acquisition is a dealership, such as payroll records or licenses. Moreover, she testified she was only ever employed by two of the Defendants: City World Toyota and City World Ford (*Id.*).

The corporate structure of Acquisition has nothing to do with the issue of whether Plaintiff is owed wages from those two (2) other former employers. Nor does the question of whether Bergin ever worked for Acquisition in any capacity have any bearing on the central issues in this wage-and-hour action.

Thus, even if Bergin did commit perjury in her testimony about Acquisition (which she did not), it was an isolated instance and not central to the substantive issues in the case, and thus could not be the basis for striking the pleadings.

6. The Lower Court Failed to Conduct an Evidentiary Hearing

If the lower court intended to rely upon 22 NYCRR § 130-1.1 in striking the pleadings of any of the Defendants, it failed to conduct any evidentiary hearing as explicitly required by the rule. *See* 22 NYCRR § 130.1.1(d).[21] In *CEMD El. Corp. v. Metrotech LLC*, 141 A.D.3d 451 (1st Dept. 2016), this Court reversed the trial court's striking of the defendant's pleadings where the defendant had failed to appear for a noticed deposition. The court found that facts were in dispute surrounding the scheduling of the deposition, and "under the circumstances presented here, a hearing is required to determine, among other things, whether defendant's failure to attend the deposition was willful and contumacious." *Id*. at 454. The Court further noted, "[t]his conclusion holds particularly true in light of the *strong preference in this state for deciding matters on the merits*." *Id.* (emphasis added). In the instant action, where Acquisition vehemently denies that Bergin committed perjury, there is an obvious issue of fact, making a hearing – already mandated by statute – imperative.

Indeed, hearings are routinely required upon motions to strike a party's pleadings. This could not be more important than in cases in which the serious accusation of perjury is made.

[21] Although Plaintiff did not move to strike Acquisition's answer under 22 NYCRR § 130-1.1, the lower court indicated that the motion was based on that rule as well as CPLR § 3126. However, under § 130-1.1, a court may issue sanctions *sua sponte* upon a finding of "frivolous conduct" only after providing "a reasonable opportunity to be heard." *See* 22 NYCRR § 130-1.1(d). No such hearing was held.

For example, in *Scarola Ellis LLP v. Padeh*, 116 A.D.3d 609 (1st Dept. 2014), a case brought by a law firm to collect allegedly unpaid fees from a former client, this Court discussed at length the underlying action (in which Scarola Ellis LLP had represented Padeh), in which the defendant had alleged that the Padeh and a third-party defendant had committed perjury during depositions, and noted: "Corcoran [alleged] that Padeh and other officers of [the third-party defendant] had committed perjury. Corcoran moved to strike Padeh and [the third-party defendant's] pleadings, and sought monetary sanctions….*The court scheduled an evidentiary hearing on Corcoran's motion*." *Id.* at 610 (emphasis added). (The case settled before the hearing commenced.) *See also Salomon v. Angsten*, 19 A.D.3d 143, 144 (1st Dept. 2005) ("The order of reference properly authorized a hearing and recommendations as to whether plaintiff and his attorney had committed perjury, since the court's purpose was not to determine whether there had been prosecutable perjury, but only whether plaintiff and his attorney had made sanctionable false statements"); *Rossbach v. Montefiore Med. Ctr.*, 2021 U.S. Dist. LEXIS 205404 (S.D.N.Y. 2021) (ordering judgment for the defendants and awarding attorney's fees, but only after "an evidentiary hearing at which the Court heard testimony").

Clearly, both applicable case law and the explicit language of 22 NYCRR § 130.1.1(d) require an evidentiary hearing before a pleading may be struck based on alleged perjury.

Here, Acquisition has not been heard on the issue of the alleged perjury and, other than in Bergin's 2021 affidavit submitted in connection with Plaintiff's motion for sanctions, Acquisition has had no opportunity to explain the discrepancies between its deposition testimony and its previous testimony. For the reasons set forth in this Section and Section A above, the striking of Defendants' pleadings should be reversed. But if this Court does not reverse the lower court's holding outright, it should at the very least remand this matter for an evidentiary hearing.

## II. THE LOWER COURT, IN ITS SEPTEMBER 2021 ORDER, IMPROVIDENTLY EXERCISED ITS DISCRETION BY DEEMING ALL ELEMENTS OF CLASS CERTIFICATION SATISFIED AS AGAINST ALL DEFENDANTS AS A DISCOVERY SANCTION

CPLR § 901(a) sets forth the five criteria a court must consider in deciding to certify a class action: (i) "the class is so numerous that joinder of all members … is impracticable[,]" *i.e.*, numerosity; (ii) "there are questions of law or fact common to the class which predominate over any questions affecting only individual members[,]" *i.e.*, commonality; (iii) "the claims or defenses of the representative parties are typical of the claims or defenses of the class[,]" *i.e.*, typicality; (iv) "the representative parties will fairly and adequately protect the interests of the class[,]" *i.e.*, representation adequacy; and (v) "a class action is superior to other available methods for the fair and efficient adjudication of the controversy[,]" *i.e.*, superior method.

### A. The Lower Court Provided Relief Beyond What Plaintiff Requested

As noted *supra*, where the court, *sua sponte*, provides relief that is different than the relief sought, or otherwise prejudicial, it is an improvident exercise of discretion. *See* cases cited, *supra* at 33-36.

In her notice of motion, Lopez requested relief under CPLR § 3126(1), or alternatively, under CPLR 3124. As a sanction, Lopez requested the trial court to "deem[] resolved for purposes of Plaintiff's upcoming motion for class certification the elements of numerosity, commonality and typicality on a class defined to include all salespersons employed by Defendants from June 16, 2011 to the present" (R481). Lopez made no request that the lower court deem the elements of representation adequacy and superior method established. Nevertheless, in its September 2021 Order, the Supreme Court, New York County (Nervo, J.), deemed all prerequisites for class certification established. (R14-23). Accordingly, the lower court improvidently exercised its discretion in granting this relief.

### B. Plaintiff Did Not Sustain Her Burden of Establishing That Defendants Bronx Ford, City World Ford, and Acquisition Violated Any Discovery Order and the Record Does Not Support Any Sanction Against Them

As noted above, in a motion under CPLR § 3126, a court may impose sanctions where the moving party satisfies their burden of "conclusively demonstrating" or "clearly showing" that the complained-of conduct was willful, contumacious or in bad faith. *See* cases cited, *supra* at 29, 37, 40, and 42.

In addition, while the degree of penalty imposed is within the court's discretion, a preclusion order (or order deeming issues resolved) should be "commensurate with the particular disobedience it is designed to punish, and to go no further …." *Landrigen*, 173 A.D.2d at 1012. *See also*, cases cited, *supra* at 31-33.

Here, the lower court, in its September 2021 Order, improvidently exercised its discretion by deeming the elements of class certification established as against all Defendants because the record does not establish a violation of a court order by any defendant, except for one violation by City World Toyota (which was based on error), no other Defendant was found to, or did, violate a discovery order.[22]

In Lopez's attorney affirmation in support of the motion, Lopez expressly stated that "the instant motion is limited to Defendants' failure to: (i) produce discovery relating to salespersons at all of its dealerships, including the City World Toyota dealership and (ii) identify the number of salespersons employed by each Defendant and at each dealership." (R485).

[22] As noted above, in Lopez's motion papers, she characterized successive orders of Justice Chan to Justice Nervo, who was recently assigned the case, as repeated orders to compel discovery (R486). This was designed to create the false impression that Defendants were given "multiple bites at the apple" to comply with court orders and had not been cooperating (R486). However, this was not accurate because the reality was that before Justice Nervo was assigned there was exactly one motion to compel, which was resolved by a stipulated order, dated August 14, 2019 (R508). The subsequent orders were the result of conferences, wherein Plaintiff refined discovery requests, and sought additional discovery.

As to the first of these alleged "failures" by Defendants, the only argument made by Lopez in the motion was that Defendant City World Toyota failed to comply with the Court's August 2019 Order[23] by failing to produce discovery as to its salespeople (R488). Defendant City World Toyota concedes that, at the time Lopez made her motion, it erred in failing to produce such discovery.

City World Toyota admittedly fell short in its compliance with the August 2019 Order. Yet, even if it were assumed that sanctions against City World Toyota was warranted, and it was not (*infra*), the failure by that Defendant should not "infect" the other Defendants who should not be found "guilty by association." This is so because each corporation or LLC is a legal entity that should be treated separately and independently. *See, e.g.*, *Alexander & Alexander of New York Inc. v. Fritzen*, 114 A.D.2d 814, 815 (1st Dept. 1985), *aff'd*, 68 N.Y.2d 968 (1986) (noting that "in terms of legal responsibility, parent, subsidiary or affiliated corporations are treated separately and independently"); *Billy v. Consolidated Mach. Tool Corp.*, 51 N.Y.2d 152, 163 (1980) ("[a]s a general rule, the law treats corporations as having an existence separate and distinct from that of their shareholders"); *Port Chester Elec. Constr. Corp. v. Atlas*, 40 N.Y.2d 652, 656 (1976) ("Corporations, of course, … have an independent legal existence").

[23] As referenced above, that Order required Defendants to produce "records for all automobile salespersons employed by Defendants" for three random months per year, from 2011 through 2019 (R508).

The lower court, however, treated all Defendants as if they were one defendant, without considering the compliance by the other Defendants, other than City World Toyota. The lower court's September 2021 Order, although not clearly articulated, apparently concluded that all Defendants failed to produce "discovery related to numerosity of potential plaintiffs, responses to various interrogatories related to class certification requirements, and records of defendants' financial/corporate-structure."[24] (R17). This was not accurate and is not supported by the record.

As to numerosity, there is, simply, no evidence in the record that any Defendant, other than City World Toyota, "fail[ed] … to produce discovery relating to salespersons at ... its dealerships." To the contrary, the record establishes that, in accordance with the August 19, 2019 Order, Bronx Ford produced extensive discovery relating to salespersons at its dealership from 2011 through 2013, when it became defunct, and that City World Ford, the successor to Bronx Ford, produced extensive discovery relating to salespersons at its dealership from 2013 through 2019.

---

[24] To the extent that the lower court concluded that Defendants failed to produce "records of defendants' financial/corporate-structure," Defendants cannot respond because no discovery obligation or order relative thereto was identified by the court or Plaintiff in the underlying motion papers. That said, Bergin, Defendants' corporate representative, testified extensively concerning the financial and corporate structure, as well as operations, of all Defendants, other than Acquisition. (R568-574, R577-636). Numerosity and interrogatories related to class certification requirements are addressed below.

This is supported by the record, which shows substantial compliance. (R487, R517, R530, R573, R614, R616).[25] *See, e.g., Carlos v. 395 E. 151st St., LLC*, 41 A.D.3d 193, 194 (1st Dept. 2007) (reversing order striking defendants' answer because "the record reveals that defendants had substantially complied" and "there was no evidence that defendants actions were willful or contumacious"); *Allstate Ins. Co. v. Buziashvili*, 71 A.D.3d 571, 573 (1st Dept. 2010) (reversing the extreme sanction of striking the answer based on defendant's "partial production").

The circumstances for reversal are more compelling here than in *Carlos* and *Buziashvili* because the record establishes that all Defendants, other than City World Toyota, complied with the lower court's order. Certainly, Lopez's motion papers and the lower court's order do not identify any violation by any other Defendants of any court order.

The second of the alleged "failures" by "Defendants" – to "identify the number of salespersons employed by each Defendant and at each dealership" – appears to concern Defendants' answers to interrogatories. However, there is simply no order compelling Defendants to supplement any answers to interrogatories, including those concerning the number of salespersons employed at each dealership.

---

[25] In addition, as to Acquisition, Bergin's deposition testimony is that it is not a dealership, and thus, had no records to produce relating to salespersons (R635). While Bergin's affidavits from 2013 and 2017, refer to Acquisition, collectively with other entities, as a "dealership" or being "in the business of selling, buying, and servicing cars" (R115-18, R119-20), a factfinder could resolve those inconsistencies, which Bergin never had the opportunity to explain in testimony.

This, essentially, raised the same issue as above.[26] In any event, although there was no court order regarding interrogatories, in Defendants' responses to post-EBT interrogatories, they referred to and described documents that had been produced by Defendants Bronx Ford and City World Ford (R529-30).

Based on the information provided, Lopez could determine for herself the number of salespersons employed by those entities from "[t]he face of each document[s]" referenced, at least for the time period covered by the production that was made in accordance with the August 2019 Order, and Lopez clearly made that determination, identifying 57 salespersons. (R491, R508, R530; *see* fn. 24). *See also, e.g.*, Fed. R. Civ. P. 33(d) (authorizing reference to documents in response to an interrogatory if the answer "may be determined" therefrom, and "if the burden of deriving or ascertaining the answer will be substantially the same for either party"); *see also Alpha Funding Group v. Cont. Funding, LLC*, 17 Misc. 3d 959, 962, 971 (Sup. Ct., Kings Cty. 2007) (finding responses were adequate where, *inter alia*, reference to production of documents was made in responses to interrogatories).

Also on the numerosity requirement, Defendants agreed to stipulate that there were "fifty-seven (57) salespersons" during the relevant time period as had been identified by Plaintiff. (R491, R562).

---

[26] While the lower court's September 2021 Order references "interrogatories related to class certification requirements," generally, suggesting all five elements (R17), Lopez's motion papers referred to discovery concerning only one class certification requirement – numerosity.

Defendants' proposed stipulation, however, was "not agreeable to Plaintiff" who rejected it (R491), despite the fact that it would have presumably been sufficient for numerosity purposes. *See, e.g. Agolli v. Zoria Hous., LLC*, 188 A.D.3d 514, 514 (1st Dept. 2020) (observing that "40 was the presumed threshold of numerosity for class certification (CPLR § 901[a][1])") (*citing Borden v. 400 E. 55th St. Assoc., L.P.*, 24 N.Y.3d 382, 400 (2014)). In short, Lopez did not argue, and presented no evidence, that Defendants Bronx Ford, City World Ford, and Acquisition violated the August 2019 Order or any other Order. To the contrary, as set forth above, the record establishes their compliance. In addition, Defendants, other than City World Toyota, in addition to producing nearly 9,000 pages of documents and providing substantive testimony, answered interrogatories directed to the number of salespersons and expressed a willingness to stipulate as to 57 salespersons. It is submitted that the conduct of those Defendants, on the whole, is indicative of good faith, not bad faith. *See Fish & Richardson, P.C. v. Schindler*, 75 A.D.3d 219, 220 (1st Dept. 2010). Based on the foregoing, the lower court's grant of sanctions as against all Defendants was an improvident exercise of discretion because the predicate for sanctions against all Defendants was lacking and because the sanctions imposed were "not commensurate with the particular disobedience it is designed to punish" (*Landrigen*, 173 A.D.2d at 1012), *i.e.*, punishing Defendants Bronx Ford, City World Ford and Acquisition for the non-compliance of City World Toyota.

**C. The Lower Court Neither Issued Prior Warning That Defendants Would Be Sanctioned with Respect to the Alleged Discovery Violations Nor Was Any Conditional Order Issued**

Typically, when a court deems issues resolved or issues a preclusion order as a discovery sanction, the court has already warned the party that its failure to comply with a particular order may result in such a sanction, or the court has issued a conditional order. *See*, *e.g.*, *Buziashvili*, 71 A.D.3d at 573 (reversing an order striking defendant's answer because "the court's orders did not warn defendant that his answer might be stricken if he did not comply, nor did the court issue a conditional order"); *see also*, *Lee v. 13th St. Entertainment LLC*, 161 A.D.3d 631, 632 (1st Dept. 2018) (reversing grant of plaintiff's motion to strike "in light of the strong preference to resolve actions on their merits," because "defendants did not receive prior warning from the court that a failure to comply with the court orders would result in CPLR § 3126 sanctions"); *Then v. New York City Transit Authority*, 99 A.D.3d 986 (2d Dept. 2012) (striking pleadings inappropriate where there was timely compliance with conditional order); *cf. U.S. Fire Ins. Co. v. J.R. Greene, Inc.*, 272 A.D.2d 148, 149 (1st Dept. 2000) (striking pleadings after "numerous warnings that failure to comply with the directive could result in the striking of its answer"); *Gibbs v. St. Barnabas Hospital*, 16 N.Y.3d 74, 83 (2010) (failure to follow conditional order of preclusion absent reasonable excuse for non-compliance and meritorious cause of action required granting motion to strike under CPLR § 3126).

There is no question that Defendants Bronx Ford, City World Ford and Acquisition were never issued a warning issued nor provided with a conditional order that they would face a discovery sanction for another party's (Defendant City World Toyota) failure to comply with the August 2019 Order and subsequent orders in 2020. In addition, there was no order directed toward City World Toyota, specifically, rather than Defendants, globally, to produce discovery concerning salespersons employed by it from 2011 through 2019. As explained below, City World Toyota misapprehended its obligations under the August 2019 Order (*infra*). So, it would not have been on notice that it faced significant discovery sanctions as a result of its misguided understanding of its discovery obligations. Moreover, there is nothing in the record to support a finding that City World Toyota would have defied an express order, a warning or a conditional order directed to it. In fact, Defendants substantially complied with the Court's orders (*supra*).

Accordingly, the lower court's September 2021 Order deeming the elements of class certification established as against all Defendants was an improvident exercise of discretion as to Defendants Bronx Ford, City World Ford, and Acquisition because there was no warning issued to those Defendants nor any conditional order that they would face any discovery sanction, including deeming class certification established, for another party's (Defendant City World Toyota) failure to comply with the August 2019 Order and subsequent orders in 2020.

Likewise, as to City World Toyota, the lower court's September 2021 Order was an improvident exercise of discretion because there was no prior order directed toward City World Toyota.[27]

### D. The Record Does Not Support Deeming All Prerequisites for Class Certification Established, and Thus, the Sanction Was Unwarranted

As noted above, pursuant to CPLR § 3126, the sanction imposed should be limited to only that for which particulars have not been furnished (*Northway Eng'g*, 77 N.Y.2d at 337) and should be "commensurate with the particular disobedience it is designed to punish" (*Landrigen*, 173 A.D.2d at 1012).

As an initial matter, there is no New York case of which we are aware that has deemed the elements of class certification established as a discovery sanction. Assuming the relief, in certain circumstances, may be appropriate, the lower court's September 2021 Order – deeming all elements of class certification (numerosity, commonality, typicality, representation adequacy and superior method) established – was not warranted as to any Defendant.

[27] The January and March 2020 Status Conference Orders also contained standard language that the "[f]ailure to comply with these directives may result in the imposition of costs or sanctions including dismiss or default judgment." (R511-13). *See Postel*, , 262 A.D.2d at 42 (holding that "the Legislature could not have intended that so serious a penalty as striking a party's pleadings could be imposed by means of a preliminary conference order, when such an order is not appealable as of right").

It is fundamental that Plaintiff, as a putative class representative, has the burden of proving entitlement to certification of a class action by establishing each of the necessary elements. *See Kudinov v. Kel-Tech Constr., Inc.*, 65 A.D.3d 481, 481 (1st Dept. 2009) (holding that the party seeking class certification bears the burden to establish through proof in admissible form that the criteria of CPLR § 901(a) have been satisfied).

Clearly, Plaintiff's motion did not even ask the lower court to deem the representation adequacy and superior method elements of class certification established. So, the record contains no evidence that any Defendant impacted Plaintiff's ability to meet her burden of establishing those two elements.

Even as to the relief sought by Lopez – deeming the elements of numerosity, commonality, and typicality established, the record does not establish how Defendants' conduct impacted Plaintiff's ability to meet her burden on class certification on those elements. In this regard, Plaintiff's motion was expressly "limited" to "discovery relating to salespersons" and the "number of salespersons employed" at the dealership (R485). The core issue raised concerned City World Toyota's failure to supply paper discovery which she claimed impacted her ability to identify the number of salespersons for purposes of establishing numerosity in a motion for class certification (R481-93).

As set forth above, given the significant production of documents by Defendants other than City World Toyota, Defendants' willingness to stipulate as to fifty-seven (57) salespersons being employed, and the extensive testimony by Defendants' corporate representative, Bergin, for nearly eight (8) hours, concerning Defendants Bronx Ford, City World Ford, and City World Toyota, there is no basis in the record to conclude that Defendants adversely impacted Plaintiff's ability to meet her burden on class certification at all.

In any event, at most, only Plaintiff's ability to prove numerosity as to Defendant City World Toyota was impacted.

In addition, even if it were assumed that the record supported a finding that Defendants Bronx Ford, City World Ford, Acquisition, and City World Toyota engaged in any conduct that adversely affected Plaintiff's ability to prove the class certification elements, by deeming class certification established on the heels of issuing an order striking the answers of all Defendants, the lower court, essentially, awarded liability for an entire class, contrary to the "strong preference to resolve actions on their merits …." *Lee*, 161 A.D.3d at 632. Rather, the remedy should have been limited. *See De Socio v. 136 E. 56th St. Owners, Inc.*, 74 A.D.3d 606, 608 (1st Dept. 2010) ("Defendant's behavior in this matter cannot be excused. Their exhibited pattern of noncompliance and their failure to account for their actions over a period of a year and a half warrant a penalty pursuant to CPLR § 3126.... While

the conduct of defendants here was unsupportable, we cannot find that it rose to the level that would justify striking the answer"); *see also Viruet v. Mount Sinai Med. Ctr. Inc.*, 143 A.D.3d 558 (1st Dept. 2016) (reversing order striking the pleadings where party responded to many discovery demands); *Banner v. New York City Hous. Auth.*, 73 A.D.3d 502, 503 (2011) (affirming denial by trial court on motion to strike pleadings where party attempted to comply with disclosure obligations). Indeed, Lopez suggested a whole panoply of alternative relief (R484).

Accordingly, the lower court's September 2021 Order deeming the elements of class certification established as against all Defendants was an improvident exercise of discretion and was unwarranted. It is submitted that the lower court should have awarded alternative relief compelling discovery, or at most, deemed the numerosity prerequisite for class certification satisfied as to Defendant City World Toyota alone.

### E. City World Toyota's Non-Compliance Was Not Willful, Contumacious, or in Bad Faith

Finally, it is submitted that the record does not establish that Defendant City World Toyota's failure to comply with the August 2019 Order was "willful, contumacious or in bad faith" (*supra*). Rather, City World Toyota erred because it failed to appreciate that its discovery obligation to produce documents related to salespersons who worked with Lopez from 2011 through 2019 applied irrespective of the fact that she last worked for City World Toyota in 2010 (R736-38, R742).

City World Toyota now fully appreciates and acknowledges this, but at the time, it misapprehended its obligations. *Cf. Anderson & Anderson LLP-Guangzhou v N. Am. Foreign Trading Corp.,* 165 A.D.3d 511, 512 (1st Dept. 2018) (observing that plaintiffs' "disagree[ment]" with the court's orders is "not a reasonable excuse for noncompliance").

It also conflated its discovery obligations with concepts of standing based on the statute of limitations (R742-43). However, as stated by this Court in *Catarine v. Beth Israel Med. Ctr.*, 290 A.D.2d 213 (1st Dept. 2002):

> It is well settled that a court should not resort to striking an answer for failure to comply with discovery directives unless noncompliance is clearly established to be both deliberate and contumacious …. Moreover, even where the proffered excuse is less than compelling, there is a strong preference in our law that matters be decided on their merits ….

*Id.*, 290 A.D.2d at 215 (citations omitted). Accordingly, City World Toyota's failure to produce documents was not "willful, contumacious or in bad faith"

While City World Toyota fell short of compliance, it is submitted that its non-compliance was not willful, contumacious, or in bad faith.

Therefore, the lower court's grant of sanctions as against all Defendants was an improvident exercise of discretion.

## CONCLUSION

For all of the reasons discussed herein, Defendants respectfully pray that this Honorable Court reverse the decisions of the Court below dated June16, 2021 and September 16, 2021 striking the pleadings and granting class certification as a sanction on the law and in the interests of justice.

Dated: Lake Success, New York
April 18, 2022

**MILMAN LABUDA LAW GROUP PLLC**

Joseph M. Labuda, Esq.
Michael C. Mulè, Esq.
Jamie S. Felsen, Esq.
Lisa M. Scruck, Esq.
Emanuel Kataev, Esq.
3000 Marcus Avenue, Suite 3W8
Lake Success, NY 11042-1073
(516) 328-8899 (office)
(516) 328-0082 (facsimile)
joe@mllaborlaw.com
michaelmule@mllaborlaw.com
jamiefelsen@mllaborlaw.com
lisa@mllaborlaw.com
emanuel@mllaborlaw.com

*Attorneys for Defendants- Appellants*

## PRINTING SPECIFICATIONS STATEMENT

Pursuant to 22 NYCRR § 1250.8(j) the foregoing brief was prepared on a computer.

*Type*: A proportionally spaced typeface was used as follows:

Name of typeface: Times New Roman

Point size: 14

Line spacing: Double

*Word Count:* The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of authorities, proof of service, printing specifications statement, or any authorized addendum containing statutes, rules, regulations, etc. is 15,920.

## STATEMENT PURSUANT TO CPLR 5531

# New York Supreme Court

APPELLATE DIVISION — FIRST DEPARTMENT

STEPHANIE LOPEZ, Individually and on Behalf of Other Persons Similarly Situated,

*Plaintiff-Respondent,*

*against*

BRONX FORD, INC., CITY WORLD ACQUISITION GROUP, INC., CITY WORLD MOTORS, LLC, CITY WORLD ESTATE AUTO HOLDINGS, L.L.C. AND/OR ANY OTHER ENTITIES AFFILIATED WITH OR CONTROLLED BY BRONX FORD, INC., CITY WORLD ACQUISITION GROUP, INC., CITY WORLD MOTORS, L.L.C. AND/OR CITY WORLD ESTATE AUTO HOLDINGS, L.L.C.,

*Defendants-Appellants.*

---

1. The index number of the case in the Court below is 155504/2017.
2. The full names of the original parties are set forth above. There has been no change to the caption.
3. The action was commenced in the Supreme Court, New York County.
4. This action was commenced on or about July 13, 2017, by the filing of a Summons and Complaint. A Second Amended Class Action Complaint was filed on or about April 12, 2018. Issue was joined by service of an Answer to Second Amended Class Action Complaint on or about May 2, 2018.
5. The nature and object of the action: compensation for wages allegedly contractually entitled.
6. The appeal is from the Decision and Orders of the Honorable Frank P. Nervo, dated June 15, 2021, September 16, 2021 and October 19, 2021.
7. This appeal is being perfected with the use of a fully reproduced Record on Appeal.