**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

| | | |
|---|---|---|
| TONY HOLLOWAY, on behalf of himself and all others similarly situated,<br>Plaintiffs,<br><br>v.<br><br>ALLIED UNIVERSAL SECURITY and BRI ROBINSON,<br><br>Defendants. | ) | Case No.: 2:25-cv-166-HSO-BWR |

**MEMORANDUM IN SUPPORT OF DEFENDANTS UNIVERSAL PROTECTION SERVICE, LLC DBA ALLIED UNIVERSAL SECURITY SERVICES AND BRITTNI ROBERTSON'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

## I. INTRODUCTION

Plaintiff Tony Holloway ("Plaintiff") was an employee of Defendant Universal Protection Service, LLC dba Allied Universal Security Services ("Allied Universal" or "Company") (erroneously named as Allied Universal Security in the Complaint). Upon hire with Allied Universal, Plaintiff entered into an Arbitration Agreement with Allied Universal whereby he agreed to arbitrate employment-related disputes against the Company and against its current or former employees (including Brittni Robertson), including wage and hour disputes. Plaintiff also agreed to waive the ability to pursue claims on a class or collective basis. Plaintiff subsequently signed two other Arbitration Agreements in connection with his employment with Allied Universal. The second and third versions of the Arbitration Agreements that Plaintiff signed are identical and they are also consistent with the first version of the Arbitration Agreement that he signed in all material respects as further detailed below. The Arbitration Agreements are enforceable under the Federal Arbitration Act (the "FAA").

Despite Plaintiff's agreements to arbitrate, Plaintiff filed this action against Allied Universal and its employee Brittni Robertson (erroneously named as "Bri Robinson" in the Complaint) ("Ms. Robertson" or "Robertson") (collectively "Defendants") asserting individual and collective wage and hour claims under the Fair Labor Standards Act ("FLSA").

Defendants now move to enforce the Arbitration Agreements, compel Plaintiff's individual claims to arbitration, dismiss the collective claims, and stay the action pending completion of arbitration. Only to the extent the Court were to decline to compel arbitration for any reason, Defendants have filed a contemporaneous motion to dismiss Plaintiff's individual and collective claims for lack of nationwide personal jurisdiction and failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b).

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Allied Universal Provides Private Security Services Nationwide

Allied Universal provides contract-based security guard services in multiple states for various types of properties, including but not limited to airports, retail centers, residential communities, office buildings, distribution/manufacturing facilities, and refineries. (Declaration of Amy Reinhold ("Reinhold Decl."), ¶ 2.) With its headquarters located outside of Mississippi, Allied Universal provides services to both Mississippi and non-Mississippi businesses, at times pursuant to multi-state service contracts, and regularly purchases goods and services from vendors located outside the State of Mississippi. (*Id.*) Allied Universal has employees in several states and is one of the largest providers of security services in the country. (*Id.*)

### B. Plaintiff's Arbitration Agreement

Plaintiff worked for Allied Universal as a security guard on and off from 2017 to 2024. (Reinhold Decl., ¶ 3.) In connection with his employment (which included being rehired at least

twice following his initial employment), Plaintiff entered into Arbitration Agreements with Allied Universal. (Reinhold Decl., ¶¶ 3, 7, 11-13, Exhs. A-C thereto.) Plaintiff's most recent Arbitration Agreement was entered into in connection with his rehire by the Company in 2021. (*Id.*, ¶¶ 3, 7, 11-13, Exh. C to Reinhold Decl.) That Arbitration Agreement expressly provides that it applies to claims arising before or after the effective date of the Arbitration Agreement and continues in effect even after termination of employment. (*Id.* at §§4, 12.)

The process for Plaintiff to sign the Arbitration Agreement was the same each time. (Reinhold, Decl.. ¶¶ 4-6.) Specifically, Allied Universal used an online onboarding platform called iCIMS, which has functioned the same throughout Plaintiff's employment. (*Id*.) In order to access iCIMS to review and complete onboarding documents, including the Company's Arbitration Agreement, a company representative emails a link to the employee's personal email address supplied by the employee at the time of applying and accepting employment. (*Id.*, ¶ 6.) The employee clicks on the link and enters a unique username and password created by the employee in connection with the application process. (*Id.*) After logging into iCIMS, the employee is directed to iCIMS's "Onboarding Tasks" screen page, where they can view and complete any onboarding documents, which include, among other things, the Arbitration Agreement. (*Id.*.)

The employee may take as much time as they need to review the contents of the documents, ask questions, acknowledge, and electronically sign the materials provided to them, including the Arbitration Agreement. The employee may also request copies of the documents. (*Id.*)

The Arbitration Agreements signed by Plaintiff are stand-alone documents each titled "Arbitration Policy and Agreement." (*Id.* at ¶¶ 7, 12, Exh. A, B and C.) Once the employee clicks on the Arbitration Agreement in iCIMS, the employee must view the entire text of the Agreement by scrolling down on the screen-page until they get to the signature space at the end of the

Agreement. (*Id.* at ¶ 7, 12, Exh. A, B and C.) Once the employee gets to the signature space, the employee must check a box to "sign" the Agreement. (*Id.*) The Agreement makes clear that checking the box is the equivalent of a handwritten signature. (*Id.*) The most recent Agreement Plaintiff signed states, immediately above the signature box:

> I, the undersigned employee, acknowledge that I have received a copy of the Company's Arbitration Policy and Agreement (the "Agreement"), in effect as of August 19, 2019. I understand that I am bound by the terms of the Agreement, unless I affirmatively opt-out of the Agreement within 30 days of my receipt of the Agreement in the manner described in Section 3 of the Agreement.
>
> By my electronic signature below, I acknowledge that I have had an opportunity to read the Agreement, that I have had an opportunity to ask questions about the Agreement, and that I understand the Agreement. I further acknowledge that I understand how to obtain this Agreement for later reference.
>
> I also acknowledge that I understand and can read English. If I do not read and understand English, I agree that I will not proceed with this onboarding and will instead email newhire@aus.com immediately to request Spanish-language translations of these documents. I understand that oral requests may not be honored.
>
> [Spanish translation omitted.]
>
> □ **Employee Signature**
> (checking the checkbox above is equivalent to a handwritten signature)

(*Id.* at Exh. C.)

After reading the Arbitration Agreement, the employee clicks the "Signature" box at the bottom of the last page to acknowledge receipt and review of the Agreement and the understanding that they are bound by the Agreement by continuing employment unless they affirmatively opt out within 30 days. (Reinhold Decl., ¶¶ 7-9, Exh. A, B and C.) Once the employee does this, the last page of the Arbitration Agreement shows the full name of the employee providing the electronic signature as well as the date and time of execution. (*Id.*, ¶ 8.) This information will not appear on

the Arbitration Agreement unless the employee checks the Signature box. (*Id.*) Plaintiff's Arbitration Agreement reflects that he signed it on March 22, 2021 at 4:35 P.M. (Reinhold Decl., ¶¶ 7,11-13, Exh. C.) Furthermore, Plaintiff did not opt out (a process that is as simple as sending an email indicating the desire to opt out of the agreement). (*Id*. at ¶ 12, Exh. C at §3.)

With respect to claims covered by the Arbitration Agreement, Plaintiff's 2021 agreement states in relevant part:

> **Claims Covered by this Agreement:** To the fullest extent authorized by law, the Parties mutually agree to the resolution by binding arbitration of all claims or causes of action that the Employee may have against the Company, or the Company against the Employee, which could be brought in a court of law, unless otherwise set forth in this Agreement. Examples of claims covered by this Arbitration Policy and Agreement specifically include, but are not limited to … **claims for wages or other compensation, penalties or reimbursement of expenses**[.]
>
> ***
>
> The Parties also agree that this Arbitration Agreement is intended to benefit certain third parties. To that end, claims covered by this Agreement also include any claim or cause of action that the Employee may have against the Company's former or current…employees…Such third parties have the right to demand arbitration under the terms and conditions of this Agreement.

(Reinhold Decl., ¶¶ 7, 12, Exh. C, §4.) (Emphasis added.)

The agreement also includes a collective action waiver stating in relevant part:

> **No Class or Collective Action Claims:** To the fullest extent permitted by law, the Parties agree that each may bring and pursue claims against the other only in their individual capacities, and may not bring, pursue, join or act as a plaintiff or class member in any purported class or collective proceeding.

(*Id.* at §5.)[1]

---

[1] Plaintiff's two earlier-signed Arbitration Agreements contain identical provisions regarding covered claims and class/collective action waiver. (Exhs. A and B to Reinhold Decl.)

**C. <u>Plaintiff's Lawsuit in Contravention of the Arbitration Agreement.</u>**

Despite Plaintiff's express agreement to arbitrate all disputes relating to his employment and to not bring claims on a collective basis, Plaintiff filed this action in court alleging wage and hour claims on behalf of himself and other allegedly similarly situated employees. Defense counsel met and conferred with Plaintiff's counsel concerning the Arbitration Agreements in an effort to secure a stipulation to individual arbitration and dismissal of the collective claims, but Plaintiff's counsel has refused to stipulate, thereby necessitating the filing of this Motion. (Declaration of Lisa M. Szafranic.)

## III. LEGAL ARGUMENT

**A. <u>The FAA Applies to the Arbitration Agreement.</u>**

Congress enacted the FAA in 1925 in response to "widespread judicial hostility" at the time toward arbitration agreements. *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). "The overarching purpose of the FAA…is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *Id.* at 344. Indeed, the Supreme Court has described the FAA as "embodying a national policy favoring arbitration." *Id.* As such, "[t]he [FAA] establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985). The Mississippi Supreme Court has directed that that "Mississippi will 'liberally construe agreements with a presumption in favor of arbitration.'" *Jackson Mac Haik CDJR, Ltd. v. Hester*, 291 So. 3d at 336 (citing *Qualcomm Inc. v. Am. Wireless License Grp.*, LLC, 980 So. 2d 261, 269 (Miss. 2007) (citing *Terminix Int'l, Inc. v. Rice*, 904 So. 2d 1051, 1054 (Miss. 2004)).

Plaintiff's Arbitration Agreement expressly states that it is governed by the FAA. (Reinhold Decl., ¶¶ 7, 11-13, Exhs. A, § 9, B § 10 and C § 10.) As such, the FAA applies to each Agreement

pursuant to that provision. *McKenzie Check Advance of Mississippi, LLC d/b/a National Cash Advance, Cash Advance Centers, Inc., et al. v. Cennie M. Hardy, et al.*, 866 So. 2d 446, 452 (Miss. 2004).

The Arbitration Agreement is also covered by the FAA because Plaintiff's employment was "within the flow of interstate commerce." *Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 112 (2001). The FAA provides that arbitration agreements included in contracts evidencing a transaction involving commerce "shall be valid, irrevocable, and enforceable, save upon grounds as exist at law or in equity for the revocation of any contract." *Jackson Mac Hair CDJR, Ltd. v. Hester,* 291 So.3d 333, 335 (Miss. 2020) (citing *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney,* 950 So. 2d 170, 173 (Miss. 2007) (internal quotation marks omitted) (quoting 9 U.S.C. § 2 (1947)). In deciding FAA coverage, courts must broadly construe the phrase "evidencing a transaction involving commerce" because Congress' intent was to provide for the enforcement of arbitration agreements to the full extent of the Commerce Clause. *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) ("[w]e have interpreted the term 'involving commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'—words of art that ordinarily signal the broadest permissible exercise of Congress' Commerce Clause power.") For purposes of Section 2, the "word 'involving' is broad and is indeed the functional equivalent of 'affecting,'" which "signals Congress' intent to exercise its Commerce Clause powers to the full." *Allied-Bruce Terminix Companies, Inc. v. Dobson,* 513 U.S. 265, 273 (1995); *see also Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003). Therefore, the FAA's "reach is expansive and coincides with that of the commerce clause." *Allied-Bruce,* 513 U.S. at 274. "Employment contracts, except for those covering workers" specifically exempted by the statute (a narrow class of interstate transportation workers) "are covered by the FAA." *E.E.O.C. v. Waffle House,* 534 U.S.

279, 289 (2002); *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001) (FAA applies to arbitration agreement with retail store employee at single location).

Here, there is no dispute that the FAA applies as Allied Universal and its employees are engaged in commerce within the meaning of the FAA. With a headquarters outside of Mississippi, Allied Universal employs a multi-state workforce to provide contract-based security services to both Mississippi and non-Mississippi businesses, at times pursuant to multi-state service contracts, and regularly purchases goods and services from vendors outside the state. (Reinhold Decl., ¶ 2.) In his Complaint, Plaintiff expressly acknowledges that "[a]t all times relevant, the Corporate Defendant [i.e., Allied Universal] is covered as an enterprise under the FLSA because it…engaged in interstate commerce…" and Plaintiff's "work required him to handle a weapon which moved in interstate commerce." [Dkt. 1, Complaint, ¶¶ 7 and 8]. Plaintiff's work also involved him being assigned to clients that Allied Universal services pursuant to multi-state contracts. (Reinhold Decl., ¶ 3.)

**B. <u>Plaintiff Entered Into Valid Arbitration Agreements Covering His Claims.</u>**

The only prerequisite for an order compelling arbitration is the Court's determination that the parties entered into a valid agreement to arbitrate the dispute at issue. *Smith v. Express Check Advance of Mississippi, LLC,* 153 So. 3d 601, 606 (Miss. 2014).

*i. A Valid Agreement to Arbitrate Exists.*

The validity and enforceability of an arbitration agreement is governed by state law applicable to contracts generally that does not conflict with the FAA. *IMA, Inc. v. Columbia Hosp. Med. City at Dallas, Subsidiary L.P.*, 1 F.4th 385, 391 (5th Cir. 2021) ([w]e apply 'ordinary state-law principles that govern the formation of contracts' to determine whether an arbitration contract was formed.). Under Mississippi law, a contract is valid if there is "(1) two or more contracting

parties; (2) consideration; (3) a sufficiently definite agreement; (4) legal capacity to enter a contract; (5) mutual assent; and (6) the absence of any other legal prohibition that would preclude contract formation." *Rotenberry v. Hooker*, 862 So.2d 266, 270 (Miss. 2003). These elements are met here.

First, there are at least two contracting parties: Plaintiff and Defendant. (Reinhold Decl., ¶ 7, Exh. A, B and C.) Second, there is consideration including the mutual agreement to arbitrate. (Reinhold Decl., ¶¶ 7, 11-13, Exhs. A, B and C.) *See e.g., New South Federal Savings Bank v. Anding*, 414 F.Supp.2d 636, 643 (S.D. Miss. 2005) ("Under Mississippi law, any mutual promises, such as mutual promises to arbitrate certain claims, constitute consideration."); *see also First Fam. Fin. Servs., Inc. v. Fairley*, 173 F. Supp. 2d 565, 572 (S.D. Miss. 2001) ("That mutual promises may constitute consideration is a rule of contracts so basic that it needs no citation to authority.") Third, there is a definite agreement to arbitrate employment related disputes. (Reinhold Decl., ¶¶ 7, 11-13, Ex. A § 3, B § 4 and C § 4.) Fourth, the parties have legal capacity to contract. Indeed, Plaintiff is "an adult individual" who was employed by Allied Universal as a "security officer" and the Company is a legal business entity. [Dkt. 1, Complaint, ¶¶ 9 and 10.] Fifth, mutual assent is apparent in that the Agreements presented to and accepted by Plaintiff expressly state that "the Company has adopted this Arbitration Policy and Agreement . . . to provide for the mutually-agreed use of a streamlined and efficient arbitration proves for the resolution of [ ] disputes as an alternative to litigating such claims in court." (Reindhold Decl., ¶¶ 7, 11-13 Exh. A (page 1), B (page 1) and C (page 1).) Sixth, there are no legal prohibitions that would preclude legal formation of an arbitration agreement subjecting FLSA claims to arbitration. Indeed, the Fifth Circuit has rejected as "unpersuasive" the contention that FLSA claims are not subject to arbitration. *See e.g., Carter v. Countrywide Credit Industries, Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (explaining that

"individuals seeking to avoid the enforcement of an arbitration agreement face a high bar…even where, as here, the [FLSA] claims subject to arbitration are statutory in nature").

*ii. Plaintiff's Claims Are Within the Scope of the Agreement.*

Plaintiff's Arbitration Agreements expressly and broadly apply to "claims for wages or other compensation, penalties or reimbursement of expenses" as well as claims for "violation of any law . . . including but not limited to . . . the Fair Labor Standards Act." (Reinhold Decl., ¶¶ 7, 11-13, Exh. A, § 3, B, § 4**,** and C § 4.) All of Plaintiff's claims in this action against Defendants are wage and hour claims arising under the FLSA and are, therefore, covered by the Arbitration Agreement. *See e.g.*, *Niolet v. Rice*, 20 So. 3d 31, 35 (Miss. Ct. App. 2009) (employee's arbitration agreement with employer extended to claims involving and/or against supervisors and therefore, non-signatory supervisor, could enforce arbitration agreement against employee) and *Thompson v. Brew Culture, LLC*, No. 3:24-CV-331-HTW-LGI, 2025 WL 2198616, at *4 (S.D. Miss. Aug. 1, 2025) ("arbitration agreement encompassing affiliates extends to disputes involving a company operating within the affiliate's system") (citing *Polyflow, LLC v. Specialty RTP, LLC*, 993 F.3d 295, 304 (5th Cir. 2021)).

*iii. Plaintiff Cannot Demonstrate Any Legal Constraints External to the Parties' Agreement Foreclosed Arbitration of His Claims.*

Under this prong of the analysis, the Mississippi Supreme Court has instructed that while "state contract defenses may invalidate the agreement as they would any other contractual provision," "because of the national policy favoring arbitration, the party opposing arbitration bears the burden to prove that a contract defense applies in the particular case." *Smith v. Express Check Advance of Mississippi, LLC*, 153 So. 3d at 606. Given the details outlined above about the language of the Arbitration Agreements and the procedures regarding the presentment of the

Arbitration Agreements, the Arbitration Agreements were presented with sufficient opportunity for Plaintiff to review and even opt-out of the Agreements if he so intended – but he did not do so. Consequently, there is no basis for Plaintiff to argue, much less prove, fraud, mistake, duress, waiver, or any other contract defense. *See e.g., Kulpa v. OM Fin. Life Ins. Co.*, 558 F. Supp. 2d 676, 683 (S.D. Miss. 2008) (enforcing an arbitration agreement signed by the plaintiff and containing "unambiguous and sufficiently visible arbitration clauses").

**C. <u>Plaintiff's Electronic Signature is Valid and Enforceable.</u>**

In 2001, the State of Mississippi adopted the Uniform Electronic Transactions Act (UETA") which governs the enforceability of electronic signatures. Miss. Code Ann. § 75-12-13. Under the UETA, an electronic signature has the same legal effect as a handwritten signature. Miss. Code Ann. § 75-12-13 ("[a] record or signature may not be denied legal effect or enforceability solely because it is in electronic form.") Additionally, an "electronic signature is attributable to a person if it was the act of the person." Miss. Code Ann. § 75-12-17. "The act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable." *Id.*

*i. Plaintiff Consented to Sign the Arbitration Agreement by Electronic Means.*

Under Mississippi law, "a person is charged with knowing the contents of any document that []he executes." *Thompson v. Brew Culture, LLC*, 2025 WL 2198616, at *3 (S.D. Miss. Aug. 1, 2025) (quoting *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 726 (Miss. 2002)) (finding the plaintiff assented to the arbitration agreement because he "had both the opportunity and the means to read, review, and reject th[e] terms"). Indeed, electronic agreements where a Plaintiff checks a box acknowledging the terms and conditions of the agreement is evidence of assent to an arbitration agreement. *See, e.g., Horton*, 2021 WL 12319966, at *4 (finding the plaintiff assented

to arbitration when she checked a box affirming that she read the terms and conditions of the contract.)

Here, Plaintiff electronically checked a box affirming his receipt and review of the Arbitration Agreements and his understanding that he was bound by it unless he affirmatively opted out within 30 days. (Reinhold Decl., ¶ 12, Exhs. A-C.) Plaintiff did not opt out. (*Id.*)

*ii. The Electronic Signature Was an Act of Plaintiff.*

The UETA does not require the proponent of an electronic signature to use any specific security mechanism to prove the electronic signature was the act of the particular person to whom the proponent attributes it; the proponent must only show the security mechanism used is effective to determine that the particular person indeed signed the document. *Id.*; *Allen v. Vaksman L. Offs., P.C.*, No. 2:19-CV-30-TBM-MTP, 2021 WL 5474488, at *5 (S.D. Miss. Sept. 30, 2021).

In *Buckhalter v. J.C. Penney Corp.*, this Court enforced an arbitration agreement that was signed through an electronic onboarding process similar to the process Plaintiff completed. No. 3:11-CV-752-CWR-FKB, 2012 WL 4468455, at *2-3 (S.D. Miss. Sept. 25, 2012). In *Buckhalter*, the plaintiff created his own password in order to access his documents. The Plaintiff then signed into his onboarding account and completed all of his employment documents, including signing an arbitration agreement, through the same secure account. The employer provided the court with declarations affirming this process. The court found this evidence sufficient to enforce the agreement. *See Buckhalter v. J.C. Penney Corp.*, 2012 WL 4468455, at *3 ("[w]ithout evidence to the contrary, the Court must find that Buckhalter assented to the arbitration agreement and that a valid arbitration agreement existed").

Here, the electronic signature process is as secure (if not more secure) than the process upheld in *Buckhalter*. All employees complete onboarding and policy acknowledgements through

iCIMS using the same process used by Plaintiff. A link to access the platform is sent to a personal email address supplied by the employee (here, Plaintiff). The platform requires the employee to enter a unique username and password created by the employee in order to access the documents. Only the employee using these credentials can cause the employee's signature to be on the documents, including the Arbitration Agreement, and Plaintiff's Arbitration Agreements reflect the date and time he chose to sign each Arbitration Agreement. (Reinhold Decl., ¶¶ 4-13, Exhs. A-C.)

### D. Plaintiff's Collective Claims Must Be Dismissed and the Action Stayed Pending Arbitration.

The collective claims are properly dismissed because the Arbitration Agreements contain a collective action waiver whereby Plaintiff agreed to forego pursuing covered claims on a collective basis and to resolve his individual claims in arbitration. (Reinhold Decl., ¶¶ 7, 11-13, Exhs. A, §4, B §5 and C §5.) This provision is enforceable. *Epic Systems Corp. v. Lewis*, 584 U.S. 497 (2018). Because Plaintiff has waived the ability to pursue claims on a collective basis, once Plaintiff's individual claims are compelled to arbitration, the collective claims should be dismissed and the case otherwise stayed pending completion of individual arbitration. *Smith v. Spirrizzi,* 601 U.S. 472 (2024).

## IV. CONCLUSION

Based on the foregoing, the Court should grant this Motion and enter an order compelling Plaintiff to arbitrate his individual claims, dismissing the collective claims, and otherwise staying the action pending completion of arbitration.

Respectfully submitted this 10th day of February, 2026.

PHELPS DUNBAR LLP

BY: */s/ Adam Harris*
Adam Harris MS Bar No.: 102955
2602 13th Street, Suite 300
Gulfport, Mississippi 39501
Telephone: 228 679 1130
Facsimile: 228 679 1131
Email: adam.harris@phelps.com

Robin E. Largent
(admitted pro hac vice)
MARTENSON, HASBROUCK & SIMON LLP
455 Capitol Mall, Suite 400
Sacramento, California 95814
Telephone: 916 970 1430
Email: rlargent@martensonlaw.com

Lisa M. Szafranic
(admitted pro hac vice)
MARTENSON, HASBROUCK & SIMON LLP
2573 Apple Valley Road
Atlanta, Georgia 30319
Telephone: 404 909 8100
Facsimile: 404 909 8120
Email: lmszafranic@martensonlaw.com

***Attorneys for Universal Protection Service, LLC dba Allied Universal Security Services and Brittni Robertson***

## CERTIFICATE OF SERVICE

I certify that on February 10th, 2026, I electronically filed the foregoing with the Clerk of Court using the ECF system which will send notification of such filing to all counsel of record.

*/s/ Adam Harris*
ADAM HARRIS